THE STATE EX REL. BROWN *v.* INDUSTRIAL COMMISSION OF OHIO.

[Cite as *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45.]

(No. 93–943—Submitted September 14, 1993—Decided December 15, 1993.)

---

*David C. Brown,* pro se.

*Lee I. Fisher,* Attorney General, and *William J. McDonald,* Assistant Attorney General, for respondent Industrial Commission of Ohio.

---

DOUGLAS, J. The issue presented by this mandamus action is whether the commission improperly ordered relator's permanent total disability compensation suspended while relator is incarcerated in a penal institution of this state. For the reasons which follow, we find that the commission suspended relator's compensation contrary to law.

As a preliminary matter, we note that in its order suspending relator's compensation, the commission relied upon R.C. 4123.54. It is apparent that the commission was relying upon the last paragraph of R.C. 4123.54(B), which was added to the statute effective August 22, 1986. That portion of the statute

provides that "[c]ompensation or benefits shall not be payable to a claimant during the period of confinement of the claimant in a penal institution * * *."

It is well settled that a claimant's entitlement to workers' compensation payments is a substantive right measured by the statutes in force at the time of injury rather than by subsequently enacted statutes. *Republic–Franklin Ins. Co. v. Amherst* (1990), 50 Ohio St.3d 212, 213, 553 N.E.2d 614, 615. Applying this principle, we observe that on the date of relator's injury, R.C. 4123.54 was silent with respect to restrictions on a claimant's benefits due to incarceration. Therefore, we find that the last paragraph of R.C. 4123.54(B), pertaining to compensation or benefits payable to a claimant during incarceration, is not applicable to the facts in this case.[2]

On August 24, 1993, the commission filed a response to this court's order to show cause why relator's writ should not be granted. In its response, the commission premises termination of compensation on principles enunciated in *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533, and *State ex rel. Chrysler Corp. v. Indus. Comm.* (1991), 62 Ohio St.3d 193, 580 N.E.2d 1082. The commission takes the position that *Ashcraft*, read in conjunction with *Chrysler*, allows for the suspension of workers' compensation payments, without limitation, when a claimant becomes an inmate in a penal institution. We disagree.

In *Ashcraft*, we upheld the denial of a claimant's request for reinstatement of *temporary total* disability compensation on the grounds that the claimant's incarceration amounted to a voluntary abandonment of his former position. 34 Ohio St.3d at 44–45, 517 N.E.2d at 535. Our decision in *Ashcraft* was rooted largely in principles set forth in *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.* (1985), 29 Ohio App.3d 145, 29 OBR 162, 504 N.E.2d 451, wherein the issue before the court was whether a claimant's voluntary retirement from the work force precluded temporary total disability benefits. *Ashcraft, supra,* 34 Ohio St.3d at 43, 517 N.E.2d at 534.

In *Chrysler, supra,* relying on *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678, we concluded that voluntary retirement not only precluded receipt of temporary total disability compensation but also precluded receipt of permanent total disability compensation. 62 Ohio St.3d at 196, 580 N.E.2d at 1084–1085. We reasoned that if abandonment of a former position of employment barred temporary total disability compensation, it must also preclude permanent total disability compensation because "former

---

2. We are aware, of course, that R.C. 4123.54(B) does not differentiate between types of compensation or benefits paid to an injured claimant. However, since R.C. 4123.54(B) was enacted *after* the claimant's injury, the statute is not applicable in this case.

position of employment" is necessarily included within "sustained remunerative employment," by which permanent total disability compensation is determined. *Id.*

Even though, at first glance, our findings in *Ashcraft* and *Chrysler*, when read together, appear to support the commission's position, we find that both decisions are distinguishable and not applicable here. More important, we find that the commission's argument lacks merit when the underlying purposes of compensation for temporary total disability and for permanent total disability are contrasted.

Temporary total disability compensation and permanent total disability compensation are governed by separate sections of R.C. Chapter 4123 and it is clear that "[t]he different statutory goals require the two sections to be read separately." *State ex rel. Bunch v. Indus. Comm.* (1980), 62 Ohio St.2d 423, 427, 16 O.O.3d 449, 451, 406 N.E.2d 815, 818. R.C. 4123.56 deals with temporary total disability compensation, while R.C. 4123.58 concerns compensation for permanent total disability.

Temporary total disability is a disability which prevents a worker from returning to his or her former position of employment, *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586, syllabus, and involves exclusively work-prohibitive disabilities, *State ex rel. Kaska v. Indus. Comm.* (1992), 63 Ohio St.3d 743, 746, 591 N.E.2d 235, 237. The ultimate purpose of temporary total disability compensation is to compensate an employee for his or her *lost earnings*. *Bunch, supra,* 62 Ohio St.2d at 427, 16 O.O.3d at 451, 406 N.E.2d at 818. Further, an employee's compensation can be terminated pursuant to R.C. 4123.56 under specific circumstances. For instance, temporary total disability compensation can be terminated if the employee has returned to work, the employee's treating physician has made a written statement authorizing the worker's return to his former position, or the disability has become permanent. *Ramirez, supra,* 69 Ohio St.2d at 632, 23 O.O.3d at 519, 433 N.E.2d at 588.

In contrast, permanent total disability is a disability rendering a claimant unfit for sustained remunerative employment, *State ex rel. Jennings v. Indus. Comm.* (1982), 1 Ohio St.3d 101, 1 OBR 135, 438 N.E.2d 420, and the purpose of the compensation is to compensate a worker for *total* impairment of his or her *earning capacity, Bunch, supra,* 62 Ohio St.2d at 427, 16 O.O.3d at 451, 406 N.E.2d at 818, citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.* (1975), 42 Ohio St.2d 278, 71 O.O.2d 255, 328 N.E.2d 387. We have stated that earning capacity "connotes not what claimant *did* earn, but what he or she *could have* earned." (Emphasis *sic.*) *State ex rel. Eaton Corp. v. Indus. Comm.* (1993), 66 Ohio St.3d 180, 183–184, 610 N.E.2d 992, 995. Moreover, R.C. 4123.58 does not speak specifically to termination of compensation, but, rather, provides that "the

employee shall receive an award to continue until his death * * *." R.C. 4123.58(A).

In *Ashcraft, supra,* we basically concluded that the claimant's temporary total disability compensation could be denied or terminated because the claimant's choice to engage in criminal activity was comparable to the claimant's voluntary abandonment of his former position of employment. However, it is clear that such a situation did not, nor could it possibly, exist here.

The commission goes astray in this case by focusing on relator's incarceration rather than the relator's disability. Clearly, once a worker has been declared permanently and totally disabled he or she is incapable of returning to work. As such, a claimant who has a permanent and total disability is incapable of abandoning a position because that position, in effect, does not exist. Indeed, a claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal.

Additionally, it is important to discern that R.C. 4123.58 (permanent total disability) involves earning capacity. The fact that relator was imprisoned did not change his capacity to work. Further, R.C. 4123.58, unlike R.C. 4123.56 (temporary total disability), does not discuss specific instances when workers' compensation may be terminated. This is because R.C. 4123.58 mandates that permanent total compensation continue until the employee's death. Accordingly, we believe the commission's reliance on *Ashcraft* is misplaced.

We further find that the commission's reliance on *Chrysler* is clearly distinguishable and can be easily reconciled with our situation here. In *Chrysler,* the claimant was injured and he was awarded temporary total disability compensation. The claimant eventually returned to work and several years later he retired, indicating on a form that he was taking an "Early Retirement at Employee Option." A few years following his voluntary retirement, the claimant applied for permanent total disability compensation.

A critical distinction exists between *Chrysler* and the case before this court. *Chrysler* concerned a claimant's total disability which did not arise until *after* he had retired from his former position of employment. Here, we are confronted with a claimant who has been declared permanently disabled *prior* to his incarceration. Hence, it would be incorrect to maintain that the claimant's request for permanent total disability benefits in *Chrysler,* which were sought *after* the claimant voluntarily retired, can be equated with the relator's benefits, which were awarded *prior* to his imprisonment but then later suspended. Thus, *Chrysler,* being factually inapposite to this case, does not apply.

On September 7, 1982, the commission awarded relator permanent total disability compensation. A finding by the commission that a claimant is perma-

nently and totally disabled is a finding that the claimant is permanently removed from the work force by reason of his or her injury. In a situation where it has been determined that a claimant is entitled to permanent total disability compensation, it is of no consequence that a subsequent event may arise, such as the claimant's incarceration, which may further impair his or her ability to work, because the subsequent event does not negate the causal relationship between the work-related injury suffered by the claimant and his or her absence from the work force. In other words, when a claimant has been determined to be permanently and totally disabled, it is not the subsequent incarceration which prevents the claimant's return to sustained remunerative employment, it is the disability itself.

For the foregoing reasons, we find that the commission improperly suspended relator's workers' compensation benefits. Therefore, the requested writ of mandamus is granted.

As a final note, we realize that payment of workers' compensation to a penal inmate may be offensive to many. However, sentiment aside, we are required to follow the law pronounced by the General Assembly. Numerous courts outside this state that have confronted this issue have declined to terminate or suspend benefits absent express statutory authority. See, *e.g., Bearden v. Indus. Comm. of Arizona* (1971), 14 Ariz.App. 336, 483 P.2d 568; *Spera v. Wyoming Worker's Comp. Div.* (Wyo.1986), 713 P.2d 1155; *Crawford v. Midwest Steel Co., Inc.* (La.App.1987), 517 So.2d 918; *Forshee & Langley Logging v. Peckham* (1990), 100 Ore.App. 717, 788 P.2d 487; and *King v. Indus. Comm. of Utah* (Utah App.1993), 850 P.2d 1281. See, also, *United Riggers Erectors v. Indus. Comm. of Arizona* (Ariz.App.1981), 131 Ariz. 258, 640 P.2d 189; and *Last v. MSI Constr. Co., Inc.* (1991), 305 S.C. 349, 409 S.E.2d 334. The Supreme Court of Wyoming, in countering an argument that a worker receives a double recovery if workers' compensation benefits are not suspended during incarceration, aptly stated that:

"Even if we agreed with the State that jail time amounts to a governmental benefit rather than punishment, we would still uphold his right to benefits. The worker's disability payments cannot be characterized as mere governmental largesse that can be eliminated when the worker's needs are fulfilled from another governmental source. Rather, the worker's statutory right to disability payments is akin to a contract right. Nobody would argue, in the private insurance context, that an insurer could withhold payments due under an insurance contract just because the insured had a second policy which covered the same disability. The insurers would ordinarily have to pay under both policies unless one of the insurance contracts contained an excess insurance or exclusionary clause which provided otherwise.

"We believe this same principle should apply to industrial insurance created by statute. Because there is no statutory exception which eliminates benefits when a worker is jailed, the benefits are due the worker even if his needs are fulfilled from another governmental source. * * *" *Spera, supra,* 713 P.2d at 1157–1158.

The relator in the case before us suffered an injury for which he had a lawful right to compensation. Pursuant to R.C. Chapter 4123, relator's right to sue his employer for injury was abrogated in exchange for his rights under workers' compensation laws. Absent legislative action (which now exists) effective at the time of injury, relator should not be denied his right to such compensation.

*Writ granted.*

MOYER, C.J., A.W. SWEENEY, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

WRIGHT, J., dissents.

WRIGHT, J., dissenting. Whether the compensation received by an injured employee is labeled temporary total disability or permanent total disability, the purpose behind the compensation provided by the workers' compensation laws remains the same: to replace lost wages. Individuals confined to penal institutions have removed themselves from the work force and consequently have no wages, actual or potential, that can be replaced. Our decision in *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533, implicitly recognized this idea.

The decision in *Ashcraft* was based on sound public policy, a policy now codified at R.C. 4123.54(B). Unlike the majority's opinion, the statute does not distinguish between temporary total benefits and permanent benefits. And its explicit mandate is that compensation is not payable to individuals confined to penal institutions. I see no reason to depart from this policy in the case before us today.

Accordingly, I respectfully dissent.