THE STATE EX REL. GROSS, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE; FOOD, FOLKS & FUN, INC., D.B.A. KFC, APPELLANT.

[Cite as *State ex rel. Gross v. Indus. Comm.,*
112 Ohio St.3d 65, 2006-Ohio-6500.]

(No. 2005–1689—Submitted July 18, 2006—Decided December 27, 2006.)

—————

**Per Curiam.**

{¶ 1} A single issue is before us: Did the Industrial Commission abuse its discretion in finding that an employee voluntarily abandoned his employment, thus disqualifying himself from compensation for temporary total disability? Upon review, we hold that it did not.

{¶ 2} Appellee David M. Gross began working for appellant, Food, Folks & Fun, Inc. ("F.F.F."), d.b.a. KFC, on September 27, 2003. During his orientation, he was given an employee handbook. One of the safety rules in the handbook stated:

{¶ 3} "F.F.F. wants to have a safe place for you to work—and safety is an important part of your job. To help prevent accidents—follow these safety tips:

{¶ 4} " * * *

{¶ 5} "Follow all warnings and instructions about the safe operation of all equipment. *Never boil* water in a cooker to clean it." (Emphasis sic.)

{¶ 6} The handbook also discussed "critical violations":

{¶ 7} "A Critical Violation means you could lose your job right away. Here are examples of some, but not all, Critical Violations:

{¶ 8} " * * *

{¶ 9} "Violating F.F.F. health, security, or safety guidelines that cause or could cause illness or injury of anyone."

{¶ 10} Gross acknowledged, in writing, receiving the handbook.

{¶ 11} A warning label affixed to the top of the 690 Henny–Penny gas pressure cooker at Gross's workplace reminded employees that they should "not close the lid with water or cleaning agents in the cook pot." Despite this warning and the one in the employee handbook, supervisor Adrian LeBlanc observed Gross on one

occasion putting water into the cooker to clean it. LeBlanc confronted Gross, explaining the proper cleaning procedure and stressing that adding water to the cooker could cause serious injuries.

{¶ 12} On November 26, 2003, co-worker Timothy Hayes saw Gross again putting water into the cooker. Hayes immediately told him to stop and clean it out the proper way. Moments later, a second co-worker warned Gross not to open the cooker's lid, as the now boiling water was under extreme pressure. Gross ignored both men and opened the lid, severely burning himself and two others.

{¶ 13} Gross's workers' compensation claim was allowed, and he began receiving temporary total disability compensation. On February 13, 2004, F.F.F. informed Gross that it had completed its accident investigation and explained to him the following:

{¶ 14} "Eye witnesses to this event have confirmed that you refused to follow expressed instructions. You were to never put water into the 690 Henny–Penny gas pressure fryer for cleaning or performing a 'boil out.' You were warned one time previous to the accident by Adrian LeBlanc, Market Coach, not to fill the fryer with water for cleaning as this could result in injuries. Also, on the night of the accident, you were instructed, by your Supervisor, to drain the water from the fryer. Even after these warnings by your supervisors, you chose to leave the water in the fryer, close the lid, and heat the fryer. Additionally, a co-worker then warned you not to open the lid. For reasons only known by you, you choose [sic] to ignore all warnings which resulted in causing injuries to yourself and two fellow employees.

{¶ 15} "Beyond all of the above warnings, you ignored the warning label affixed to the lid of the fryer that clearly states 'do not close the lid with water or cleaning agents in the cook pot.'"

{¶ 16} F.F.F. indicated that it "cannot and will not tolerate employees who pose a danger to themselves and others based upon their refusal or failure to follow instructions and recognized safety procedures." His employment was terminated effective that date.

{¶ 17} F.F.F. asked the Industrial Commission of Ohio to terminate temporary total disability compensation as of February 13, 2004, contending that Gross's firing that day constituted a voluntary abandonment of his employment. The commission agreed, finding that the termination satisfied *State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469. According to the commission, Gross's termination for workplace misconduct constituted a voluntary abandonment of his employment that barred further temporary total disability compensation.

{¶ 18} Gross filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had acted unlawfully in stopping his temporary total disability compensation. The court of appeals issued the writ, citing *State ex rel. Pretty Prods., Inc. v. Indus. Comm.* (1996), 77 Ohio St.3d 5, 670 N.E.2d 466, and *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61.

{¶ 19} According to the court of appeals, Gross was actually discharged because he had been injured in the workplace. The court therefore classified the separation from employment as an involuntary one that did not disqualify Gross from temporary total disability compensation.

{¶ 20} This cause is now before this court on an appeal as of right filed by Gross's employer.

{¶ 21} At issue is the effect of Gross's firing on his eligibility for temporary total disability compensation. Under *State ex rel. Baker v. Indus. Comm.* (2000), 89 Ohio St.3d 376, 732 N.E.2d 355, and *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, his dismissal would be irrelevant if Gross had become unable to work at a subsequent job because of the same industrial injury. That, however, did not occur here.

{¶ 22} Cases of abandonment of employment are particularly challenging because they require the decision-maker to determine which of two causes prevents the claimant's return to the former position of employment: the industrial injury or the simple fact that the position is no longer available to the claimant. This inquiry, of course, derives from our most fundamental workers' compensation tenet: disability must be causally related to an industrial injury's allowed conditions. *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533.

{¶ 23} Gross denies that he abandoned his employment. If an employee is already disabled when the separation from employment occurs, he contends, there can be no abandonment, because "a claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for that employment at the time of the abandonment or removal." *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 48, 623 N.E.2d 55. See, also, *State ex rel. Pretty Prods., Inc.*, 77 Ohio St.3d 5, 7, 670 N.E.2d 466.

{¶ 24} Gross relies heavily on these cases, stressing that his doctor certified temporary total disability beginning November 26, 2003, and he was fired on February 13, 2004. We decline, however, to apply *Brown* and *Pretty Prods.* to these unique facts. In this case, Gross's disability and the misconduct that precipitated a finding of voluntary abandonment occurred simultaneously, not sequentially. The date of disability onset preceded the date of termination only

because F.F.F. conducted an investigation first rather than firing him on the spot, which, given the gravity of the misconduct, may not have been unwarranted.

{¶ 25} Gross alternatively proposes that his separation from employment was involuntary. As Gross argues, involuntary separation does not prevent a claimant from receiving temporary total disability compensation, and a job loss caused by industrial injury is involuntary. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678. In the case before us, the court of appeals classified Gross's departure as involuntary, citing our decisions in *Pretty Prods.* and *Coolidge,* supra.

{¶ 26} In *Pretty Prods.,* claimant's doctor had certified her as medically unable to return to her job until March 1. Claimant did not return on that date or the next two work days. Lacking a medical slip that extended her disability, claimant was terminated under a provision in the union/management agreement pertaining to consecutive unexcused absences.

{¶ 27} After her dismissal, claimant applied for temporary total disability compensation. Her employer unsuccessfully asserted voluntary abandonment before both the commission and the court of appeals. We ultimately issued a writ ordering the commission to clarify the basis for its decision but suggested that if the discharge had been precipitated by injury-related absences, a finding of involuntary departure might be sustainable.

{¶ 28} *Coolidge* involved an employment-contract dispute under R.C. 3319.16. At issue was the employer's claim that a "good and just cause" supported the termination of an employee. Coolidge, the employee, had been assaulted by a pupil and had missed nearly two years of work as a result. When she failed to return after exhausting her contractual leave options, the school board that employed her terminated her teaching contract.

{¶ 29} "Good and just cause" was not statutorily defined. We held that "good and just cause" did not exist when the contract was canceled for reasons "repugnant to public policy." *Coolidge,* 100 Ohio St.3d 141, 2003-Ohio-5337, 797 N.E.2d 61, ¶ 20. In holding for Coolidge, we stressed that she was on temporary total disability compensation when terminated, which confirmed that her absence was related to industrial injury. We then held that public policy—and with it R.C. 3319.16—was violated when an employee was "discharged *solely* because of the disabling effects of the allowed injury, that is, absenteeism and inability to work." (Emphasis added.) Id. at ¶ 18.

{¶ 30} *Coolidge,* however, was not a workers' compensation case; it was an employment case. It did not involve Coolidge's eligibility for temporary total disability compensation. It did not involve interpretation of R.C. 4123.56, principles of voluntary abandonment, or any other workers' compensation law, and neither the commission nor the Bureau of Workers' Compensation was a party in

*Coolidge.* Accordingly, it is neither necessary nor appropriate to resort to that case, particularly when *Pretty Prods.* addresses this issue. And *Pretty Prods.* does not advance Gross's cause. Gross was not fired because of absenteeism or any work rule or policy related thereto. He was fired because he directly and deliberately disobeyed repeated written and verbal instructions not to boil water in the pressurized deep fryer and injuries followed. We decline, therefore, to place these facts within the ambit of *Pretty Prods.*

{¶ 31} Finally, Gross emphasizes that the purpose of the workers' compensation system is to compensate employees for the effects of workplace injury. Workers' compensation, he argues, was intended to remove negligence and fault—by either employee or employer—from the workplace-injury equation. He argues that his firing stems from a negligent act on his part and that by allowing that act to bar temporary total disability compensation, the court would reinsert negligence into the equation.

{¶ 32} Gross offers a thought-provoking argument, but we do not find that these particular facts are conducive to further discussion of that proposition. Gross *willfully* ignored *repeated* warnings not to engage in the proscribed conduct, yet still wishes to ascribe his behavior to simple negligence or inadvertence. To address his argument further is to validate that categorization—something we decline to do.

{¶ 33} For all of these reasons, the judgment of the court of appeals is reversed.

                                                          Judgment reversed.

MOYER, C.J., RESNICK, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

---

LUNDBERG STRATTON, J., dissenting.

{¶ 34} Because I believe that the commission abused its discretion when it concluded that the claimant had voluntarily abandoned his job, I respectfully dissent.

{¶ 35} Appellee David Gross was a 16–year–old high school student working at a KFC restaurant for less than three months when he was severely burned on November 26, 2003, while cleaning a pressure cooker. He filed a workers' compensation claim that was allowed for his burns. On December 8, 2003, he was awarded compensation for temporary total disability ("TTD") from the date of the injury until April 6, 2004.

{¶ 36} KFC investigated the events that led to the accident. Almost three months later, KFC concluded that Gross had failed to follow verbal warnings and

violated written safety procedures at the time of the accident. KFC's director of operations fired him on February 13, 2004. At the request of KFC, the commission then determined that Gross had voluntarily abandoned his employment by his own actions. The commission ordered TTD payments terminated as of February 13.

{¶ 37} This is an issue of first impression for us. We have created complicated distinctions between voluntary and involuntary departures. The distinction is even more difficult when the employer's reason for termination is inextricably tied to the accident that produced the injury. Because of "the great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation," I believe we should examine Gross's situation more closely in light of the totality of the circumstances. *State ex rel. Smith v. Superior's Brand Meats, Inc.* (1996), 76 Ohio St.3d 408, 411, 667 N.E.2d 1217.

{¶ 38} Although KFC may have been justified in terminating Gross for misconduct, I do not believe that, under these circumstances, his firing should bar TTD compensation. We have held that if an employee's departure from the workplace "is causally related to his injury," it is not voluntary and should not preclude the employee's eligibility for TTD compensation. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 46, 531 N.E.2d 678. I agree with the appellate court that KFC's termination letter established that Gross's termination was casually related to his industrial injury. 2005-Ohio-3936, 2005 WL 1806457 at ¶ 11. The company interviewed eyewitnesses to the accident and concluded that Gross was at fault because his misconduct "resulted in causing injuries to [Gross] and two fellow employees." As a result of the investigation, the company notified him, "[Y]our employment at [KFC] is hereby terminated effective February 13, 2004."

{¶ 39} An employer may argue that a claimant has voluntarily abandoned his former position of employment only if the worker was medically capable of doing the job at the time the abandonment occurred. *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 48, 623 N.E.2d 55. But if the claimant leaves the job because he can no longer perform his duties as a result of an industrial injury, the separation is involuntary. *State ex rel. Rockwell Internatl.,* 40 Ohio St.3d at 46, 531 N.E.2d 678. In this case, the majority reasoned that Gross's misconduct that resulted in termination occurred simultaneously with the accident and the onset of disability. Therefore, according to the majority, he voluntarily abandoned his job. I do not agree with that analysis. His disability and termination did not occur at the same time. Gross became disabled instantaneously as the result of his accident on November 26, 2003. He became separated from the workplace on February 13, 2004, when KFC fired him. Therefore, I believe that *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 623 N.E.2d 55, and

*State ex rel. Pretty Prods., Inc. v. Indus. Comm.* (1996), 77 Ohio St.3d 5, 670 N.E.2d 466, do apply, thereby preserving Gross's eligibility for TTC.

{¶ 40} I am also concerned that the majority is tacitly injecting fault into a no-fault system of compensation and reintroducing contributory negligence as a basis for defeating the right to recover compensation. Our workers' compensation laws are intended to compensate a worker who suffers an industrial injury without a determination of fault or wrongdoing. Yet KFC assessed fault for the accident and acted according to its conclusion. This is contrary to worker's compensation principles, and we should not condone such actions.

{¶ 41} If we conclude that this was a voluntary departure that precludes payment of TTD, I believe that this will place us on a slippery slope toward assessing fault in industrial accidents. The employer will examine the employee's conduct following an industrial accident and use any infraction discovered to terminate the employee. When this occurs, where do we draw the line? What about the employee who fails to properly shut down a machine, tries to stop it manually, and, as a result, causes a machine malfunction that results in injury? The employer may decide to terminate the employee for improperly operating the machine in violation of a work rule. Should the employee's fault preclude his receiving TTD benefits? The answer to this question is no. Our workers' compensation laws do not permit the introduction of fault—regardless of whether the employee's act that caused injury was intentional or negligent. Therefore, if the employee is terminated and the termination was related to the employee's conduct that resulted in injury, I believe it should be deemed an involuntary termination.

{¶ 42} Gross was a teenager at the time of the accident, and, most likely, he was immature and naïve. He suffered serious injuries as a consequence of his actions. However, the purpose behind workers' compensation is to protect those who suffer work-related injuries regardless of their own negligence or fault. *State ex rel. Cotterman v. St. Marys Foundry* (1989), 46 Ohio St.3d 42, 544 N.E.2d 887. Although KFC may have been justified in terminating Gross for intentionally violating a work rule, in many instances, there may be little distinction between an intentional violation and a negligent violation of a rule. Our workers' compensation system has compensated thousands of workers who have been injured as the result of intentional violations of workplace rules. I see no reason to withhold Gross's TTD benefits on that basis.

{¶ 43} I believe that Gross's termination was "causally related to his industrial injury" and that he did not voluntarily abandon his job. *State ex rel. Pretty Prods., Inc.,* 77 Ohio St.3d at 8, 670 N.E.2d 466. Consequently, I believe that the

commission abused its discretion when it ordered TTD payments terminated. I would affirm the judgment of the court of appeals. Therefore, I dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.

---

Hochman & Plunkett Co., L.P.A., Gary D. Plunkett, Brett R. Bissonnette, and Todd T. Miller, for appellee David M. Gross.

Scheuer, Mackin & Breslin, L.L.C., Edna Scheuer, and Salvatore A. Gilene, for appellant.

Jim Petro, Attorney General, and Andrew J. Alatis, Assistant Attorney General, for appellee Industrial Commission.

Philip J. Fulton Law Office, Philip J. Fulton, and David B. Barnhart, urging affirmance for amicus curiae, Ohio Academy of Trial Lawyers.