THE STATE EX REL. HADDOX, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT, ET AL.

[Cite as *State ex rel. Haddox v. Indus. Comm.,* **135 Ohio St.3d 307, 2013-Ohio-794.**]

*Workers' compensation—Res judicata and continuing jurisdiction of Industrial Commission—Temporary-total-disability compensation—Discharge not tantamount to voluntary abandonment of employment.*

(No. 2011-1622—Submitted January 22, 2013—Decided March 12, 2013.)

APPEAL from the Court of Appeals for Franklin County,

No. 10AP-152, 2011-Ohio-3923.

_____

**Per Curiam**.

**{¶ 1}** This case involves the question of an injured truck driver's eligibility to receive temporary-total-disability compensation after he was discharged from employment. The driver was injured in 2005 in a traffic accident for which he was cited. This was his third moving violation in one year, and as a result, he was dropped from his employer's liability insurance policy. Without insurance coverage, he could no longer work as a truck driver, and the employer fired him.

**{¶ 2}** In 2006, the Industrial Commission initially concluded that he was not eligible for temporary-total-disability compensation, because his discharge was a voluntary abandonment of employment. A year later, a staff hearing officer concluded that his discharge was not voluntary abandonment under the recently decided *State ex rel. Gross v. Indus. Comm.,* 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162 (the voluntary-abandonment doctrine as applied to an employee who had been fired for the conduct that resulted in his industrial injury),

and approved a subsequent request for temporary-total-disability compensation based on additionally allowed conditions.

{¶ 3} The commission exercised continuing jurisdiction and concluded that the staff hearing officer had made a clear mistake of law by not considering the commission's initial finding of voluntary abandonment as res judicata as to the second request. The commission also determined that the staff hearing officer had misapplied *Gross* because the injured worker's discharge was due to his lack of insurance, not his industrial injury. Thus, according to the commission, he had voluntarily abandoned his employment and was not eligible to receive temporary-total-disability benefits.

{¶ 4} The court of appeals concluded that the commission had abused its discretion, and it issued a writ of mandamus that ordered the commission to award benefits or reconsider the denial of benefits from the date of the injury, in accordance with *Gross*.

{¶ 5} For the reasons that follow, we affirm the judgment of the court of appeals granting the writ of mandamus.

### *Facts and Procedural History*

{¶ 6} The claimant-appellee, George H. Haddox, was a truck driver for Forest City Technologies, Inc. On December 20, 2005, he was injured in a motor vehicle accident within the course and scope of his employment. His workers' compensation claim was allowed for "sprain lumbar region."

{¶ 7} This was Haddox's third accident in the calendar year 2005. As a result, his employer's liability insurance would no longer cover him. Forest City terminated his employment in January 2006.

### A. First Application for Temporary-Total-Disability Compensation

{¶ 8} Haddox filed a request for temporary-total-disability compensation to begin on the date he was injured, December 20, 2005. A staff hearing officer denied the request. The hearing officer concluded that Haddox's discharge

2

constituted a voluntary abandonment of employment because Haddox had violated a company policy that required termination of employment for a third traffic violation. The commission refused to hear Haddox's appeal.

**B.   Additionally Allowed Conditions and the Second Application for Temporary-Total-Disability Compensation**

{¶ 9}   The commission later approved Haddox's claim for two additional conditions of substantial aggravation of lumbar spondylolisthesis and spondylosis. Haddox filed a second request for temporary-total-disability compensation beginning September 4, 2007, based on the additional conditions.

{¶ 10} A district hearing officer denied the request, finding that Haddox's discharge was related to his inability to perform his duties as a truck driver for the company, not due to his injuries. A staff hearing officer reversed, relying on the statement in *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162, ¶ 19, that the voluntary-abandonment doctrine " 'has never been applied to preinjury conduct or conduct contemporaneous with the injury.' " The staff hearing officer awarded compensation because Haddox's discharge was causally related to acts that occurred contemporaneously with or before his injuries.

{¶ 11} The commission refused further review.

**C.   Third Application for Temporary-Total-Disability Dating Back to Original Injury**

{¶ 12} Haddox filed a third request for benefits for temporary total disability, asking for compensation dating back to his initial injury, based on the order approving his second application. A district hearing officer concluded that the commission had previously adjudicated the issue of voluntary abandonment for the original claim and that it was res judicata. The hearing officer rejected Haddox's argument that the previous orders could be vacated on the basis of *Gross*. A staff hearing officer agreed.

**{¶ 13}** On March 6, 2008, the commission refused Haddox's appeal.

**D. Employer's Request for Reconsideration of the Order Awarding Temporary-Total-Disability Compensation for Additional Conditions**

**{¶ 14}** The employer asked the commission to invoke its continuing jurisdiction under R.C. 4123.52 and reconsider the award of temporary-total-disability compensation based on the additional conditions (Haddox's second application). According to the employer, the order was based on a clear mistake of law because the finding of voluntary abandonment in the initial denial of compensation was res judicata.

**{¶ 15}** On March 7, 2008 (the day after the commission had refused Haddox's appeal from the denial of his second application), the commission entered an interlocutory order and set the matter for further hearing to evaluate whether the staff hearing officer had made a mistake of law that would warrant the commission's exercise of continuing jurisdiction over the issue of Haddox's voluntary abandonment as res judicata and to consider the application of *Gross* on his eligibility for temporary-total-disability compensation.

**{¶ 16}** On June 2, 2008, the commission determined that the staff hearing officer had made a clear error of law by not relying on res judicata to deny the compensation requested in his second application. The commission granted reconsideration to correct the error and denied Haddox's current request based on the additional conditions. In the alternative, the commission determined that even if res judicata did not apply, Haddox had voluntarily abandoned his employment. According to the commission, a representative of the employer had testified that Haddox was terminated because he could no longer be insured as a truck driver on the employer's group liability policy due to his three moving violations. The commission noted that although the allowed injury occurred simultaneously with the third moving violation, Haddox's loss of earnings was caused by the lack of insurance, not his injury.

**E. Haddox's Mandamus Action**

{¶ 17} Haddox filed a complaint for a writ of mandamus asking the Court of Appeals for Franklin County to require the commission to order temporary-total-disability compensation beginning on the date of his initial injury. Haddox alleged that according to *Gross*, he was entitled to compensation because the loss of his job was related to his injury, so his departure from employment was not voluntary.

{¶ 18} The court of appeals concluded that res judicata did not apply and that the commission had abused its discretion when it vacated the award for the additional conditions. Because the moving violations that resulted in Haddox's inability to be insured had occurred prior to and contemporaneously with his injury, the court held that his discharge could not be considered a voluntary abandonment making him ineligible for temporary-total-disability compensation.

{¶ 19} Applying *Gross* to the facts of this case, the appellate court issued a writ of mandamus ordering the commission to vacate the denials of temporary-total-disability compensation that were based on abandonment of employment, to reinstate one award of compensation, and to redetermine the remaining motions for compensation on the medical evidence. 2011-Ohio-3923, ¶ 9, 12-13, 16.

{¶ 20} The commission's appeal as of right is now before the court.

*Legal Analysis*

{¶ 21} We must determine whether the commission abused its discretion when it exercised continuing jurisdiction for the purpose of correcting what it considered a clear mistake of law. Our review addresses the follow issues: Was the commission's initial finding of voluntary abandonment res judicata for all future applications for temporary-total-disability compensation, or did *State ex rel. Gross v. Indus. Comm.* apply? Did the commission's exercise of continuing jurisdiction (over the order deciding the second request for benefits for temporary total disability) extend to modify the initial order denying compensation?

## A. Temporary Total Disability and Voluntary Abandonment

{¶ 22} The purpose of temporary-total-disability compensation is to compensate an injured employee for lost earnings during the period of disability while the injury heals. *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 35; *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42, 517 N.E.2d 533 (1987). To qualify for temporary-total-disability compensation, an injured worker must demonstrate that he or she is medically unable to return to the former position and that the industrial injury is the reason for the loss of earnings. *State ex rel. McCoy* at ¶ 35.

{¶ 23} When the employee no longer has a loss of earnings, temporary-total-disability benefits terminate. This occurs when the employee returns to work or is capable of returning to work. Benefits for temporary total disability also terminate when the injury has reached maximum medical improvement. R.C. 4123.56. Benefits may also terminate if the employee voluntarily leaves the workforce. *Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44, 46, 531 N.E.2d 678 (1988). (After termination of benefits for temporary total disability, a claimant remains entitled to payments for medical expenses and may be eligible for compensation for any permanent disability. R.C. 4123.57 and 4123.66.)

{¶ 24} When an employee is fired for misconduct, the dismissal may be deemed a voluntary abandonment of employment "when it arises from the employee's decision to engage in conduct that he or she knows will result in termination." *State ex rel. Brown v. Hoover Universal, Inc.,* 132 Ohio St.3d 520, 2012-Ohio-3895, 974 N.E.2d 1198, ¶ 11; *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401, 403, 650 N.E.2d 469 (1995). The commission must look to the underlying facts and circumstances of the discharge, including its timing and nature, when classifying the employee's departure as voluntary or involuntary. *McCoy*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 20; *State ex rel. Smith v. Superior's Brand Meats, Inc.*, 76 Ohio St.3d 408, 411, 667

N.E.2d 1217 (1996). The underlying principle is that the employee's departure from employment must be causally related to the injury for the employee to be eligible for temporary-total-disability compensation. *Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d at 46, 531 N.E.2d 678.

**B.  *State ex rel. Gross v. Indus. Comm*.**

**{¶ 25}** Shortly after the commission determined in 2006 that Haddox was ineligible for temporary-total-disability compensation because he had voluntarily abandoned his former position, this court reviewed the voluntary-abandonment doctrine in the context of an employee who had been fired for the very conduct that resulted in his industrial injury. David Gross, an employee at a KFC restaurant, burned himself and two others when he placed water in a pressurized deep fryer, heated the fryer, and then opened the lid. Following an investigation, KFC discharged Gross for violating a workplace safety rule and defying repeated verbal warnings. The commission said this was a voluntary abandonment of his employment and terminated Gross's temporary-total-disability benefits.

**{¶ 26}** This court initially upheld the commission's decision, *State ex rel. Gross v. Indus. Comm.*, 112 Ohio St.3d 65, 2006-Ohio-6500, 858 N.E.2d 335 ("*Gross I*"), but later reconsidered and ordered the commission to reinstate benefits. *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162 ("*Gross II*"). In *Gross II,* the court explained that it had not intended *Gross I* to create an exception to or an expansion of the voluntary-abandonment doctrine or to inject fault into the no-fault nature of workers' compensation. *Id*. at ¶ 19-21.

**{¶ 27}** Upon reconsideration, *Gross II* reiterated that the underlying issue in a voluntary-abandonment case is "whether his injury or his termination * * * is the cause of his loss of earnings." *Id*. at ¶ 23. "The distinctions between voluntary and involuntary departure are complicated and fact-intensive." *Id.  Gross II* examined the evidence and concluded that KFC's termination letter—in which

KFC stated that it was Gross's rule violation, resulting in the injury that had triggered the investigation and led to his subsequent termination—established that his discharge was related to the industrial injury. Thus, Gross's termination was involuntary and did not bar temporary-total-disability benefits. *Id*. at ¶ 25-26.

{¶ 28} This court had the opportunity to apply *Gross II* in *State ex rel. Upton v. Indus. Comm*., 119 Ohio St.3d 461, 2008-Ohio-4758, 895 N.E.2d 161. In that case, Upton had been discharged for causing multiple motor vehicle accidents, including the one in which he was injured. The commission denied his request for temporary-total-disability compensation, filed prior to *Gross II*, because his discharge constituted a voluntary abandonment of his former position. *Id*. at ¶ 5. In a split decision, the court of appeals concluded that Upton did not have clear notice in advance of the grounds for his termination, so it was an involuntary departure. The court granted a writ of mandamus. *State ex rel. Upton v. Indus. Comm*., 10th Dist. No. 06AP-594, 2007-Ohio-3283.

{¶ 29} We affirmed, stating: "*Gross II* held that if a claimant is injured by the same misconduct that led to his or her termination, eligibility for temporary total disability compensation is not compromised. *Gross II* controls and renders the court of appeals reasoning moot." 119 Ohio St.3d 461, 2008-Ohio-4758, 895 N.E.2d 161, at ¶ 8.

{¶ 30} The court of appeals' application of *Gross II* in this case comports with *Upton*. Haddox, a truck driver, had three moving violations and was no longer able to be insured by his employer. The court of appeals held that because the moving violations occurred prior to and contemporaneously with the injury, his termination was not a voluntary abandonment, because "[u]nder the terms of *Gross II,* [Haddox's] actions prior to and concurrent with his industrial injury did not form a basis for concluding he voluntarily abandoned his employment, meaning the commission abused its discretion in concluding otherwise." *State ex rel. Haddox*, 2011-Ohio-3923, ¶ 10.

**C. Continuing Jurisdiction Grants Broad Authority to the Commission**

{¶ 31} In this appeal, the commission argues that the court need not apply *Gross II,* because the commission's original decision that Haddox had voluntarily abandoned his employment, decided prior to *Gross II*, became res judicata for all future applications for temporary-total-disability compensation arising out of the same incident. But the court of appeals determined that once the commission invoked its continuing jurisdiction, the previous determination was subject to revision, and res judicata no longer applied. *Id.* at ¶ 12.

{¶ 32} Res judicata may apply in quasi-judicial administrative proceedings. *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St.3d 526, 2009-Ohio-1704, 905 N.E.2d 1210, ¶ 29. But the defense of res judicata has a limited application in workers' compensation matters because of the commission's continuing jurisdiction in certain circumstances. *State ex rel. B.O.C. Group, Gen. Motors Corp. v. Indus. Comm.*, 58 Ohio St.3d 199, 200, 569 N.E.2d 496 (1991). R.C. 4123.52 grants the commission broad authority when exercising continuing jurisdiction so that the commission may "make such modification or change" to former findings or orders "as, in its opinion is justified." Such broad authority permits the commission to address any issues pertaining to the order in question. *State ex rel. Wheeler v. Indus. Comm.*, 10th Dist. No. 02AP-865, 2003-Ohio-3120, ¶ 67-69; *State ex rel. Hayes v. Indus. Comm.*, 10th Dist. No. 01AP-1087, 2002-Ohio-3675, ¶ 47.

{¶ 33} Although the parties litigated the issue of Haddox's eligibility for temporary-total-disability benefits to a resolution in 2006, the commission reopened the issue when it exercised continuing jurisdiction to reconsider Haddox's second application based on a mistake of law. *State ex rel. B & C Machine Co. v. Indus. Comm.*, 65 Ohio St.3d 538, 541-542, 605 N.E.2d 372 (1992). The commission's continuing jurisdiction permitted it to modify or

amend, if necessary, the former order dating back to the injury. *State ex rel. Riter v. Indus. Comm.*, 91 Ohio St.3d 89, 90, 742 N.E.2d 615 (2001).

## *Conclusion*

**{¶ 34}** Because Haddox was discharged for the same misconduct that caused his industrial injury, the discharge was not tantamount to a voluntary abandonment of employment that precludes temporary-total-disability compensation. *State ex rel. Upton*, 119 Ohio St.3d 461, 2008-Ohio-4758, 895 N.E.2d 161; *Gross II*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162. The commission abused its discretion when it reconsidered the order on the basis of res judicata. Finally, it is within the commission's exercise of continuing jurisdiction to modify its initial order denying temporary-total-disability compensation and to award compensation dating back to the date of injury.

**{¶ 35}** Consequently, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER and O'NEILL, JJ., concur.

LANZINGER, J., concurs in judgment only.

O'DONNELL, KENNEDY, and FRENCH, JJ., dissent.

_____

**O'CONNOR, C.J., concurring.**

**{¶ 36}** I concur in the majority's decision, because I must.

**{¶ 37}** As the majority opinion makes clear, the result in this case is compelled by the court's prior decision in *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162 ("*Gross II*").

**{¶ 38}** I dissented, strongly, from the majority's decision in *Gross II*, asserting that this court had wrongly decided to reconsider its prior decision in the case, *State ex rel. Gross v. Indus. Comm.*, 112 Ohio St.3d 65, 2006-Ohio-6500, 858 N.E.2d 335 ("*Gross I*"), and wrongly decided to find that the Industrial Commission abused its discretion in determining that David Gross had voluntarily

10

abandoned his employment by repeatedly disregarding his employer's clear warnings that his misconduct in the workplace was endangering himself and others. *See generally Gross II* at ¶ 29-80.

{¶ 39} Five years later, I remain resolute that *Gross II* was wrongly decided and that the majority retreated from its holding in *Gross I* because of public criticism of that decision.

{¶ 40} But five years later, *Gross II* remains the law of Ohio.

{¶ 41} There appears to be no will to overrule *Gross II* in accordance with our decision in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph one of the syllabus ("A prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical  workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it"). I will not ignore precedent.

{¶ 42} As we set forth in our decision in *Shay v. Shay*, 113 Ohio St.3d 172, 2007-Ohio-1384, 863 N.E.2d 591, ¶ 26, a justice's dissenting view is, by its very nature, " 'a disagreement with a majority opinion,' Black's Law Dictionary (8th Ed.2004) 506, without force of law or precedential value."  Though that opinion may be strongly held, as mine is here, it must yield to precedent.

> [D]eference to an established majority opinion, despite a jurist's disagreement with the opinion, is part of the court's rich tradition of adherence to stare decisis.  See, e.g., *Taylor v. Natl. Group of Cos., Inc.* (1992), 65 Ohio St.3d 482, 483, 605 N.E.2d 45 (Holmes, J., concurring) ("Although I dissented in *Elek v. Huntington Natl. Bank* [(1991), 60 Ohio St.3d 135, 573 N.E.2d 1056]*, and still personally adhere to the view espoused in such dissent, the policy

of stare decisis prevails, and I must concur with the majority on that basis"); *Ewers v. Coldren* (1949), 151 Ohio St. 193, 195, 85 N.E.2d 107 ("While the writer of the present opinion wrote the dissent in [*Squire v. Guardian Trust Co.* (1946), 147 Ohio St. 1, 33 O.O. 179, 68 N.E.2d 312], and while Judge Matthias and Judge Hart, who concurred in such dissenting opinion, and the writer are still of the opinion expressed in such dissent, yet we believe that generally in procedural questions the doctrine of stare decisis should be recognized").

As we stated in *Galatis*, whenever possible we must maintain and reconcile our prior decisions to foster predictability and continuity, prevent the arbitrary administration of justice, and provide clarity to the citizenry. *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 43. That understanding is perhaps particularly true in cases driven by statutory interpretation and any legislative response to that interpretation. See *Square D Co. v. Niagara Frontier Tariff Bur., Inc.* (1986), 476 U.S. 409, 424, 106 S.Ct. 1922, 90 L.Ed.2d 413, quoting *Burnet v. Coronado Oil & Gas Co.* (1932), 285 U.S. 393, 406, 52 S.Ct 443, 76 L.Ed. 815 (Brandeis, J., dissenting) ("As Justice Brandeis himself observed * * * in commenting on the presumption of stability in statutory interpretation: 'Stare decisis is usually the wise policy because in most matters, it is more important that the applicable rule of law be settled than that it be settled right. * * * This is commonly true, even where the error is a matter of serious concern, provided correction can be had by legislation' ").

*Shay* at ¶ 27-28.

**{¶ 43}** Because *Gross II* remains the law of Ohio, we are duty-bound to follow it until this court overrules it or the General Assembly acts to vitiate its holding. In light of the court's opinion here, there should be no mistake that the remedy for *Gross II*, if there is to be one, must come from the legislative branch. I urge the General Assembly to act, but until it does, I must follow the law. I thus concur in the majority's reasoning and judgment in this case.

_____

David W. Goldense and Libert Pinto, for appellee.

Michael DeWine, Attorney General, and Patsy A. Thomas, Assistant Attorney General, for appellee.

_____