Kennedy, J.,
dissenting.
{¶ 52} Because the majority opinion narrows the circumstances under which the voluntary-abandonment doctrine applies to exclude the situation in which an employee, prior to sustaining a workplace injury, uses an illegal drug in violation of a written drug-free-workplace policy, I dissent. Our precedent establishes that when an employee uses illegal drugs in violation of a written drug-free-workplace policy, that misconduct severs the causal connection between the injury and the wage loss, precluding temporary-total-disability (“TTD”) compensation. See State ex rel. Cobb v. Indus. Comm., 88 Ohio St.3d 54, 723 N.E.2d 573 (2000); State ex rel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51. Therefore, I would reverse the judgment of the Tenth District Court of Appeals and deny the writ of mandamus against the Ohio Industrial Commission.
*496 {¶ 53} The majority relies on State ex rel. Gross v. Indus. Comm., 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162 (“Gross II”), and State ex rel. Reitter Stucco, Inc. v. Indus. Comm., 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, to support its conclusion that appellee, James F. Cordell, did not voluntarily abandon his employment when he chose to use marijuana prior to his injury, because his marijuana use was discovered after his injury. Majority opinion at ¶ 22. However, this expansion of our holdings in Gross II, State ex rel. Upton v. Indus. Comm., 119 Ohio St.3d 461, 2008-Ohio-4758, 895 N.E.2d 161, and State ex rel. Haddox v. Indus. Comm., 135 Ohio St.3d 307, 2013-Ohio-794, 986 N.E.2d 939, to further limit the application of the voluntary-abandonment doctrine is unwarranted.
{¶ 54} One general principle to keep in mind when analyzing workers’ compensation cases is that “workers’ compensation cases are, to a large extent, very fact specific. [Therefore], no one test or analysis can be said to apply to each and every factual possibility.” Fisher v. Mayfield, 49 Ohio St.3d 275, 280, 551 N.E.2d 1271 (1990). Therefore, the Gross II line of cases should be applied only in cases with similar facts, i.e., cases in which the employee is fired for violating a workplace-safety rule when the misconduct causes his industrial injury. A review of the historical development of the voluntary-abandonment doctrine reveals the two-step analysis the majority should have undertaken here.
{¶ 55} This court has recognized that under R.C. 4123.56, TTD “is defined as a disability which prevents a worker from returning to his former position of employment.” State ex rel. Ramirez v. Indus. Comm., 69 Ohio St.2d 630, 433 N.E.2d 586 (1982), syllabus. We first applied the concept of voluntary abandonment in relation to TTD in State ex rel. Ashcraft v. Indus. Comm., 34 Ohio St.3d 42, 517 N.E.2d 533 (1987).
{¶ 56} In Ashcraft, an injured worker who had been receiving TTD compensation was incarcerated. To answer the question whether that incarcerated injured worker was entitled to continue receiving TTD compensation, this court examined a decision of the Tenth District that concluded:
[W]here the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability benefits since it is his own action, rather than the industrial injury, which prevents his returning to such former position of employment.
State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm., 29 Ohio App.3d 145, 147, 504 N.E.2d 451 (10th Dist.1985). Relying on the reasoning in Jones & *497 Laughlin, we held that TTD compensation was not payable to the injured worker in Ashcraft:
While a prisoner’s incarceration would not normally be considered a “voluntary” act, one may be presumed to tacitly accept the consequences of his voluntary acts. When a person chooses to violate the law, he, by his own action, subjects himself to the punishment which the state has prescribed for that act.
Based on the foregoing, we find that relator’s incarceration constitutes a factor which, independently of his previously recognized work-related injury, would preclude his receipt of temporary total disability compensation.
Ashcraft at 44-45.[2]
{¶ 57} This court refined the holding in Ashcraft in State ex rel. Rockwell Internatl. v. Indus. Comm., 40 Ohio St.3d 44, 531 N.E.2d 678 (1988). In Rockwell, an injured worker retired as a result of his injury. This court reaffirmed that voluntary abandonment of the former position of employment can preclude TTD compensation. However, we made clear that the analysis must look beyond the mere voluntary nature of a claimant’s departure and must consider whether there is a causal connection between the departure and the injury. “[W]here a claimant’s retirement is causally related to his injury, the retirement is not ‘voluntary’ so as to preclude eligibility for temporary total disability compensation.” Id. at 46.
{¶ 58} After Rockwell, we considered whether the doctrine of voluntary abandonment could be applied to a termination of employment for violating a written absence policy in State ex rel. Louisiana-Pacific Corp. v. Indus. Comm., 72 Ohio St.3d 401, 650 N.E.2d 469 (1995). Relying on Ashcraft and State ex rel. Watts v. Schottenstein Stores Corp., 68 Ohio St.3d 118, 623 N.E.2d 1202 (1993), the court established a three-part test to determine whether a termination was voluntary. We held that a firing equates to a voluntary abandonment when the employee violated a written work rule or policy that “(1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee.” Louisiana-Pacific at 403.
*498 {¶ 59} Following Louisiana-Pacific, the court urged caution in the application of the rule enunciated in Louisiana-Pacific, recognizing the “great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation.” State ex rel. Smith v. Superior’s Brand Meats, Inc., 76 Ohio St.3d 408, 411, 667 N.E.2d 1217 (1996). Therefore, in these cases, the court must “carefully examine the totality of the circumstances.” Id.
{¶ 60} In Cobb, this court addressed for the first time the issue whether an employee who was terminated for violating a drug-free-workplace policy had voluntarily abandoned employment. 88 Ohio St.3d 54, 723 N.E.2d 573. The claimant in Cobb attempted to have TTD compensation reinstated after his termination. Relying on Rockwell, Watts, and Louisianor-Pacific, this court held that the claimant had voluntarily abandoned his employment “when he chose to use illegal drugs.” Cobb at 57.
{¶ 61} In McCoy, this court again considered whether illegal drug use in violation of a workplace policy that resulted in the firing of the claimant constituted voluntary abandonment. 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51. One of the TTD claimants in McCoy suffered a hernia as a result of his work. The next day, while being treated for the injury at the hospital, the claimant was drug tested, and when the employer learned that the claimant tested positive for cocaine, he was fired. This court “reexamine[d] the proposition that eligibility for TTD compensation depends generally upon whether the former position of employment would still be available to the claimant when his or her industrial injury stabilizes.” Id. at ¶ 22. The court focused on the proximate cause of the loss of wages and noted that a “voluntary departure” can preclude eligibility for TTD compensation only if it “operates to sever the causal connection between the claimant’s industrial injury and the claimant’s actual wage loss.” Id. at ¶ 38.
{¶ 62} This court refined the application of the three-part Louisiana-Pacific test in Reitter Stucco, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861. In Reitter Stucco, we held that “even if a termination satisfies all three Louisiana-Pacific criteria for being a voluntary termination, eligibility for temporary total disability compensation remains if the claimant was still disabled at the time the discharge occurred.” Id. at ¶ 10; see also State ex rel. Pretty Prods., Inc. v. Indus. Comm., 77 Ohio St.3d 5, 7, 670 N.E.2d 466 (1996) (timing of separation is crucial because abandonment can occur only if claimant has physical capacity for employment at time of abandonment or removal), citing State ex rel. Brown v. Indus. Comm., 68 Ohio St.3d 45, 48, 623 N.E.2d 55 (1993).
{¶ 63} In Reitter Stucco, the claimant injured his back at work in 2003. After surgery and while he was rehabilitating, the claimant made comments about the company’s president, for which he was fired in April 2005. This court held that *499 the claimant was entitled to continue receiving TTD compensation and that the determinative fact was that the claimant was “medically incapable of returning to his former position of employment at the time of his discharge.” Reitter Stucco at ¶ 12.
{¶ 64} In recent cases interpreting the voluntary-abandonment doctrine, we have held that an employee’s discharge for violating a workplace-safety rule that was causally related to the injury did not constitute a voluntary abandonment. Gross II, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162, at ¶ 23-24; Upton, 119 Ohio St.3d 461, 2008-Ohio-4758, 895 N.E.2d 161, at ¶ 8; Haddox, 135 Ohio St.3d 307, 2013-Ohio-794, 986 N.E.2d 939, at ¶ 34.
{¶ 65} It is clear from our precedent that when determining whether an employee has voluntarily abandoned employment by violating a workplace rule, a two-step analysis is required. First, using the three-part test of Louisiana-Pacific, we must determine whether the employer had a clearly defined workplace rule that prohibited the conduct as a dischargeable offense and whether the employee knew of or should have known about the rule. Louisiana-Pacific, 72 Ohio St.3d at 403, 650 N.E.2d 469. Second, we must examine the timing of the misconduct pursuant to Reitter Stucco. 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, at ¶ 12.
{¶ 66} Applying the two-step analysis here, there is no dispute that the three-part test of Louisianar-Pacific was met. Appellant Pallet Companies, Inc. (“Pallet”) had a written drug-free-workplace policy that clearly defined as a dischargeable offense the use of illegal drugs, and Cordell knew or should have known of the policy because he signed and initialed every page of the policy on August 4, 2009. The second step requires us to examine when the alleged abandonment occurred. The timing is important because an employee can abandon employment only when he has the physical capacity for employment. Pretty Prods., 77 Ohio St.3d at 7, 670 N.E.2d 466.
{¶ 67} The majority focuses on the timing of the discovery of the misconduct, but it is the timing of the misconduct itself that is relevant because it was the misconduct that resulted in the termination. And at the time of the misconduct, Cordell had the physical capacity to perform his employment. Moreover, contrary to the majority’s conclusion, this court’s determination in McCoy, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, should control. A postinjury positive drug test makes the employee’s voluntary misconduct, not his injury, the proximate cause of his loss of wages from his former employer. Id.
{¶ 68} The majority attempts to distinguish McCoy by stating, “[T]he legal issue in McCoy was not whether the employee had voluntarily abandoned his employment.” Majority opinion at ¶ 35. While the majority is correct that the issue in McCoy was whether an employee who reenters the workforce but due to *500 an injury from a prior job becomes temporarily and totally disabled while working at the new job is eligible to receive TTD compensation, the court recognized that its holding applied to “a claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position.” (Emphasis added.) McCoy at ¶ 39. As a necessary part of its analysis in the case, the McCoy court had to first determine that the employee had voluntarily abandoned his prior employment by using cocaine. Id. at ¶ 43. Therefore, the reasoning in McCoy should be applied in this case.
Craigg E. Gould, for appellee.
Dinsmore & Shohl, L.L.P., Christen S. Hignett, and Michael L. Squillace, for appellant Pallet Companies, Inc.
{¶ 69} Moreover, the majority’s focus on the timing of the discovery of the misconduct is misplaced. The majority incorrectly views the positive drug test as the offense for which Cordell was terminated and holds that because the testing occurred after he was injured, Cordell cannot lose his TTD compensation, citing Gross II and Reitter Stucco. Majority opinion at ¶ 36. I disagree with that analysis. Cordell’s preinjury use of marijuana was the offense for which he was terminated. The drug test was merely the means employed to detect the violation of the written drug-free-workplace policy.
{¶ 70} Here, the connection between the industrial injury and the loss of wages was severed by Cordell’s preinjury use of marijuana. Because Cordell violated his employer’s drug-free-workplace policy when he used an “illegal controlled substance,” he severed his employment at the time of use. The discovery of the use of the illegal substance was not a violation of company policy. Pallet’s policy also clearly states that its employees will be drug tested when they are “involved * * * in an equipment or vehicular work-related accident.” The policy also makes clear that the discipline for violating the illegal-substance policy is “immediate termination.” Therefore, Cordell voluntarily abandoned his employment prior to his injury because he knew that his use of marijuana would result in his termination if the use was discovered.
{¶ 71} When the two-step analysis dictated by Louisiana-Pacific and Reitter Stucco is applied to the facts of this case, it is clear that Cordell voluntarily abandoned his employment when he used an illegal substance prior to sustaining his workplace injury. Therefore, I dissent and would reverse the judgment of the Tenth District Court of Appeals and deny the writ of mandamus against the Ohio Industrial Commission.
*501 Michael DeWine, Attorney General, and Lisa R. Miller, Assistant Attorney General, for appellant Industrial Commission.
Philip J. Fulton Law Office and Chelsea Fulton Rubin, urging affirmance for amici curiae, Ohio Association of Claimants’ Counsel and Ohio Association for Justice.

. While Ashcraft was pending in this court, the General Assembly enacted a provision that prohibits the payment of any workers’ compensation benefits when a claimant is confined in any state or federal correctional institution. See R.C. 4123.54(J).