*484 O’Neill, J.
{¶ 1} Appellee, James F. Cordell, was terminated from his employment with appellant Pallet Companies, Inc. (“Pallet”) after failing a routine drug test administered soon after a workplace accident in which he was injured. Pallet concedes that Cordell’s drug use did not cause the accident. In this appeal, we consider whether conduct prior to a workplace injury can sustain an employer’s defense of voluntary abandonment of employment and preclude temporary-total-disability (“TTD”) benefits. Cordell’s workers’ compensation claim was initially allowed for TTD compensation, but then the Industrial Commission determined that Cordell was not eligible for TTD compensation, because he voluntarily abandoned his employment by using marijuana prior to the accident. The Tenth District Court of Appeals granted Cordell a writ of mandamus compelling the commission to vacate its order denying TTD compensation and to issue an order granting Cordell TTD compensation. We affirm.
Facts and Procedural History
{¶ 2} The parties do not dispute the facts regarding Cordell’s injury. Cordell worked for Pallet from August 2009 until February 2012. He was injured in an accident in the course and scope of his employment on February 16, 2012. He was operating a tow motor on a loading dock that day when the truck he was servicing began to move away from the dock unexpectedly. Cordell jumped from the tow motor to the dock plate, but then fell from the dock plate when the truck moved a second time. He dropped between five and six feet, landing between the dock and the truck and fracturing his right fibula and tibia. At the hospital, Cordell’s urine was collected and sent for a toxicology screening. Cordell applied for workers’ compensation benefits the day after the accident.
{¶ 3} Six days later, on February 22, 2012, Cordell’s toxicology results became available, and they showed that he tested positive for marijuana metabolites, indicating that at some point during his employment, he had used marijuana. Cordell was terminated from employment that day for violating Pallet’s drug-free workplace policy. His termination notice specified that he was being terminated because he “failed postaccident drug screen.”
{¶ 4} Pallet’s drug-free-workplace policy prohibited the use of illegal substances “at any time whether on or off duty,” the violation of which was a terminable offense.
*485 {¶ 5} On March 5, 2012, the Bureau of Workers’ Compensation (“BWC”) allowed Cordell’s claim for medical benefits for his fractured right tibia and fibula and for TTD compensation starting on February 17, 2012. Pallet appealed on March 20, 2012, and the matter was heard by a district hearing officer (“DHO”) on May 1, 2012. The DHO determined that Cordell was eligible for medical benefits for the allowed injuries but found that he was not eligible for TTD compensation, because he had been terminated for a preinjury violation of the workplace policy.
{¶ 6} Cordell appealed from the DHO order on May 9, 2012, and the matter was heard by a staff hearing officer (“SHO”) on July 2, 2012. The SHO vacated the DHO order to the extent that it denied Cordell TTD compensation. The SHO noted that State ex rel. Pretty Prods., Inc. v. Indus. Comm., 77 Ohio St.3d 5, 670 N.E.2d 466 (1996), held that “an Injured Worker who is unable to return to work at his former position of employment cannot voluntarily abandon his former position of employment.” Applying our ruling in Pretty Prods., the SHO determined that Cordell “was terminated on 02/22/2012, after he was disabled by the injury in this claim. Therefore, the termination does not amount to a voluntary abandonment of employment and does not preclude the payment of temporary total compensation.”
{¶ 7} Pallet appealed to the commission on July 17, 2012, arguing that the SHO’s failure to apply State ex rel. PaySource USA, Inc. v. Indus. Comm., 10th Dist. Franklin No. 08AP-677, 2009 WL 3246775 (June 30, 2009), constituted legal error. In PaySource, the claimant was terminated for his use of cocaine prior to the industrial injury. The court of appeals determined that the claimant had voluntarily abandoned his employment when he used drugs prior to the injury, which severed any connection between the workplace injury and loss of wages. Thus, the court of appeals granted a writ of mandamus and ordered the commission to deny TTD compensation.
{¶ 8} After initially rejecting Pallet’s appeal, the commission agreed to consider whether Cordell was entitled to TTD compensation. On May 11, 2013, a divided panel of the commission agreed with Pallet that the SHO had made a clear mistake of law by not applying PaySource. The panel found that Cordell “sustained an injury in the course of and arising out of his employment on 2/16/2012.” But the panel determined that Cordell had “voluntarily abandoned his employment” by “ ‘ingestion’ or ‘use’ of marijuana * * * prior to [his] termination on 02/22/2012” and “prior to the industrial injury.” Accordingly, the panel denied TTD compensation from the date of the injury. Consistent with that order, the BWC issued an overpayment notice on May 17, 2013, finding that Cordell had been paid $22,081.88 in TTD compensation to which he had not been entitled.
*486 {¶ 9} One member of the panel dissented. Citing State ex rel. Ohio Decorative Prods., Inc. v. Indus. Comm., 10th Dist. Franklin No. 10AP-498 (Sept. 15, 2011), the dissenting panel member explained that PaySource has been “heavily discounted” in more recent published decisions of the Tenth District Court of Appeals. The panel member would have instead applied our decision on reconsideration in State ex rel. Gross v. Indus. Comm., 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162 (“Gross II”), and awarded TTD compensation from the time of the injury.
{¶ 10} On December 3, 2013, Cordell petitioned the Tenth District Court of Appeals for a writ of mandamus compelling the commission to vacate its order denying TTD compensation and declaring an overpayment and to enter an order awarding TTD compensation from the date of the injury. A magistrate for the court of appeals recommended that a writ issue after comparing PaySource, which did not apply Gross II, to the later-issued published opinion of the Tenth District Court of Appeals in State ex rel. Ohio Welded Blank v. Indus. Comm., 10th Dist. Franklin No. 08AP-772, 2009-Ohio-4646, 2009 WL 2872973, which did apply Gross II to essentially the same facts as in PaySource (claimant terminated after workplace injury for use of illegal drugs prior to the injury). The court of appeals adopted the magistrate’s recommendation over Pallet’s objections. We now take up the direct appeals of the commission and Pallet.
{¶ 11} The commission asserts the following two propositions of law.
{¶ 12} Proposition of law No. I: “Reliance on [Gross II] without considering the decision in [PaySource], creates bad public policy that rewards illegal behavior.”
{¶ 13} Proposition of law No. II: “When the Industrial Commission had some evidence to support its order that a claimant violated a written work rule thereby barring his receipt of TTD compensation, a writ of mandamus is not appropriate.”
{¶ 14} Pallet asserts the following three propositions of law.
{¶ 15} Proposition of law No. I: An injured worker who fails a postinjury drug test and is terminated based on his employer’s drug-free-workplace policy voluntarily abandoned his employment and is not eligible for TTD.
{¶ 16} Proposition of law No. II: Gross II, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162, does not preclude a finding of voluntary abandonment when the act that resulted in the injured worker’s termination was not contemporaneous with the injury.
{¶ 17} Proposition of law No. Ill: The commission has the exclusive authority to resolve factual issues, and to that extent, its determination that the injured worker’s conduct, which was not contemporaneous with his injury, constitutes a *487 voluntary abandonment of his employment, should not be disturbed absent a showing of an abuse of discretion.
{¶ 18} Because the second proposition of law asserted by the commission and the third proposition of law asserted by Pallet address this court’s standard of review, we will address them first.
Analysis
The commission’s second proposition of law and Pallet’s third proposition of law
{¶ 19} R.C. 4123.512 limits this court’s authority to act as an appellate body with respect to decisions made by the commission concerning the extent of disability. State ex rel. Elliott v. Indus. Comm., 26 Ohio St.3d 76, 79, 497 N.E.2d 70 (1986). (At the time Elliott was decided, R.C. 4123.512 was numbered R.C. 4123.519.) Id. It is well settled that the commission is “exclusively responsible” for making factual determinations; those determinations will not be disturbed absent an abuse of discretion. State ex rel. Nick Strimbu, Inc. v. Indus. Comm., 106 Ohio St.3d 173, 2005-Ohio-4386, 833 N.E.2d 286, ¶ 10. This is the some-evidence rule. Elliott at 79. But “[a] mandatory writ may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.” State ex rel. Gassmann v. Indus. Comm., 41 Ohio St.2d 64, 65, 322 N.E.2d 660 (1975).
{¶20} Here, the extent of Cordell’s injuries is not disputed. Therefore, we limit our review in this case to whether the law was correctly interpreted. We conclude that the commission did not correctly interpret the law in this case.
{¶ 21} For the reasons discussed below, the relevant statutes and this court’s decisions in Gross II and State ex rel. Reitter Stucco, Inc. v. Indus. Comm., 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, are directly applicable to this case and resolve the legal questions presented in favor of granting TTD benefits to Cordell.
The commission’s first proposition of law and Pallet’s first and second propositions of law
{¶ 22} We hold that pursuant to R.C. 4123.54 and 4123.56 and our decisions in Gross II and Reitter Stucco, an employee who is medically incapable of returning to work as a result of a workplace injury and who is terminated after the injury for preinjury conduct that was discovered as a result of the injury has not voluntarily abandoned employment.
{¶ 23} In 1912, Ohio amended the Ohio Constitution to establish a framework for the resolution of claims for work-related injuries. Article II, Section 35 of the Ohio Constitution provides that compensation from the workers’ compensation *488 fund to an employee injured at the workplace “shall be in lieu of all other rights to compensation, or damages for * * * injuries * * *, and any employer who pays the premium or compensation provided by law * * * shall not be liable to respond in damages at common law or by statute for * * * injuries.” Ohio’s workers’ compensation system is a no-fault system. Workers’ compensation benefits are “neither an award of damages nor the imposition of a penalty. [The workers’ compensation system] recognizes the fact that the risk of injury or death is an incident of employment in industry * * State ex rel. Crawford v. Indus. Comm., 110 Ohio St. 271, 275, 143 N.E. 574 (1924).
{¶ 24} Ohio’s workers’ compensation system is a system of mutual compromise. Blankenship v. Cincinnati Milacron Chems., Inc., 69 Ohio St.2d 608, 614, 433 N.E.2d 572 (1982). The compromise that employers make for immunity from suit is their payment of premiums into the state insurance fund. R.C. 4123.74 and 4123.35. The compromise for employees is their relinquishment of common-law tort claims in exchange for the right to be compensated for loss sustained on account of the injury. R.C. 4123.54.
{¶ 25} In Ohio, employees are not entitled to compensation for loss if the industrial injury was proximately caused by the employee’s being intoxicated or under the influence of illegal substances. R.C. 4123.54(A)(2). Further, R.C. 4123.54(B) creates a rebuttable presumption that a claimant’s being intoxicated or under the influence of drugs was the proximate cause of the injury. It is important to reiterate that in this case, Pallet concedes that Cordell’s marijuana use had nothing to do with his injury. Accordingly, those statutes are not at issue in this case.
{¶ 26} R.C. 4123.56(A) provides that employees shall receive a portion of their wages when they are temporarily and totally disabled as a result of a workplace injury. “[T]he purpose of temporary total disability benefits under R.C. 4123.56 is to compensate for loss of earnings * * State ex rel. Ramirez v. Indus. Comm., 69 Ohio St.2d 630, 634, 433 N.E.2d 586 (1982). TTD payments cease when the employee returns to work, when the employee’s physician releases the employee to return to his former position of employment, when work within the physical capabilities of the employee is made available to the employee by the employer or another employer, or when the employee has reached maximum medical improvement. R.C. 4123.56(A).
{¶ 27} In addition, this court has consistently held that when a claimant has left a former position of employment and his leaving was not due to a work-related injury, the claimant has voluntarily abandoned the workplace and TTD benefits may properly be denied. State ex rel. Rockwell Internatl. v. Indus. Comm., 40 Ohio St.3d 44, 46, 531 N.E.2d 678 (1988). The rationale supporting the voluntary-abandonment doctrine is that when an employee has taken an action that would *489 preclude his returning to employment, the employee is not entitled to TTD payments, since it is the action of the employee rather than the industrial injury that caused the loss of wages. State ex rel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 38.
{¶ 28} Determining whether an employee voluntarily abandoned employment becomes more complicated in the context of termination. In State ex rel. Louisiana-Pacific Corp. v. Indus. Comm., 72 Ohio St.3d 401, 650 N.E.2d 469 (1995), an employee was fired when he failed to appear for work after he was released by his physician to return to work. The commission granted TTD payments, and the court of appeals declined to disturb the commission’s order. This court reversed the judgment of the court of appeals and held that the employee had voluntarily abandoned his employment and was ineligible for TTD payments because he had been fired for violating a written work rule. The court established the following three criteria for determining whether termination for violating a work rule equates to voluntary abandonment: (1) a written work rule clearly defined the prohibited conduct, (2) prior to the claimant’s violating the rule, the prohibited conduct had been defined as a dischargeable offense, and (3) the rule was known or should have been known by the employee. Id. at 403.
{¶ 29} In Pretty Prods., 77 Ohio St.3d 5, 670 N.E.2d 466, an employee was certified to return to work on March 1, 1991; however, she failed to do so on that day or the two work days following. As a result, she was terminated. The commission ordered TTD benefits to continue after the termination, and the court of appeals refused to disturb the commission’s order. This court reversed the judgment of the court of appeals and remanded the cause to the commission because it was unclear from the commission’s order whether the employee’s unexcused absences, which resulted in her termination, were due to her injury. Id. at 7-8. In Pretty Prods., we affirmed our prior holding that “ ‘[a] claimant can abandon a former position or remove himself or herself from the workforce only if he or she has the physical capacity for employment at the time of the abandonment or removal.’ ” Id. at 7, quoting State ex rel. Brown v. Indus. Comm., 68 Ohio St.3d 45, 48, 623 N.E.2d 55 (1993). The need to investigate the character of a claimant’s departure is eliminated when the claimant can show that he was disabled when the separation occurred. Id. at 7.
{¶ 30} In Reitter Stucco, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, this court made clear that Pretty Prods, and Louisianctr-Pacific are not mutually exclusive. Reitter Stucco at ¶ 11. Reitter Stucco upheld TTD benefits for an employee who was terminated after his injury for comments he made about the company’s president. There was no dispute that the claimant was medically *490 incapable of returning to work when he was terminated. This court held that even if a termination satisfies all three Louisianor-Pacific criteria for voluntary abandonment, eligibility for TTD benefits remains if the employee was still disabled at the time the discharge occurred. That is the situation in the case before us.
(¶ 31} In Gross II, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162, we held that pursuant to statute, workers’ compensation benefits may not be denied on the basis of fault. Id. at ¶ 22, citing R.C. 4123.54(A) and Van Fossen v. Babcock & Wilcox Co., 36 Ohio St.3d 100, 110, 522 N.E.2d 489 (1988).
{¶ 32} In Gross II, an employee was injured when, in defiance of a workplace-safety rule and repeated warnings, he placed water in a pressurized deep fryer, heated the fryer, and then opened the lid. As a result of his violation of the rule, he was terminated. The termination letter sent to the employee by the employer said that it was the violation of the work rule that resulted in his injury that triggered the investigation and his subsequent termination. Because of this, this court concluded that his discharge was related to his workplace injury. Accordingly, this court found that for purposes of TTD benefits, the employee’s termination did not equate to voluntary abandonment.
{¶ 33} In Gross II, we observed that the voluntary-abandonment doctrine has been applied only in postinjury circumstances, when the employee, “by his or her own volition, severed the causal connection between the injury and loss of earnings that justified his or her TTD benefits.” Id. at ¶ 19. And we recognized that the distinctions between voluntary and involuntary are fact-intensive. However, for purposes of TTD benefits, if the claimant’s termination is causally related to his injury, the termination is not voluntary and should not preclude the claimant’s eligibility for TTD benefits. Id. at ¶ 23, citing Rockwell, 40 Ohio St.3d at 46, 531 N.E.2d 678, and McCoy, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51. In State ex rel. Haddox v. Indus. Comm., 135 Ohio St.3d 307, 2013-Ohio-794, 986 N.E.2d 939, the lead opinion, followed Gross II and reiterated that the underlying issue in a voluntary-abandonment case is whether the injury or the termination is the cause of the loss of earnings. Haddox at ¶ 27 (lead opinion), citing Gross II at ¶ 23.
{¶ 34} Applying the relevant statutes and precedents from this court to the facts of this case, Cordell is entitled to TTD benefits. There is no dispute that Cordell was injured while working for Pallet. Cordell’s use of marijuana was not the proximate cause of his injury. When Cordell was terminated by Pallet, he had not returned to work, he had not been released by his doctor to return to work, he had not reached maximum medical improvement, and he was physically incapable of returning to work. Accordingly, under R.C. 4123.54 and 4123.56, Cordell was entitled to TTD benefits.
*491 {¶ 35} Next, we apply the relevant case law of this court to the facts of this case to determine whether his termination equated to voluntary abandonment. At the outset, we recognize that one of the claimants in McCoy was an employee who tested positive for cocaine the day after his injury, when he was getting medical treatment. It is not clear from our opinion in that case whether the employee was under the influence of cocaine while he was on the job or whether his cocaine use was the proximate cause of his injury.[1] Unlike in this case, the legal issue in McCoy was not whether the employee had voluntarily abandoned his employment. In McCoy, the claimants conceded that they were fired under circumstances that amounted to a voluntary abandonment, id. at ¶ 9, so that issue was not before us. Instead, this court clarified that an employee who voluntarily abandons employment or is fired under circumstances that amount to voluntary abandonment will be eligible to receive TTD benefits under R.C. 4123.56 if he or she reenters the workforce and due to the original injury, becomes temporarily and totally disabled. McCoy at syllabus.
{¶ 36} This case is about a termination for violation of a work rule when the violation occurs before the injury and is discovered as a result of the injury. Gross II and Reitter Stucco resolve the legal issue in this case. As in Gross II, Cordell’s injury resulted in the discovery of his work-rule violation. As in Reitter Stucco, Cordell was medically incapable of returning to work when he was terminated. Accordingly, Cordell’s termination did not constitute voluntary abandonment. To be clear, Pallet had the right to terminate Cordell for violating one of its work rules. But the fact that Pallet had the right to fire Cordell does not change the facts that Cordell was injured in the course and scope of his employment and that at the time of his termination, he was temporarily and totally disabled.
{¶ 37} The commission’s proposition that reliance on Gross II to support TTD compensation in this case creates bad public policy that rewards illegal behavior is an argument that is properly addressed to the Ohio General Assembly. Workers’ compensation is not a reward; it is compensation to cover medical treatment and to replace lost wages for workers injured in the workplace. Likewise, it guarantees that employers have immunity from negligence actions brought by workers injured in the workplace. Ohio’s workers’ compensation system is a creature of statute and is designed to operate without regard to fault on the part of the employee or the employer. The Ohio General Assembly expressly excludes workers’ compensation benefits for injuries that are the result of the employee’s being under the influence of marijuana. R.C. 4123.54. Again, this is not a case where intoxication or drug use caused the workplace injury.
*492 {¶ 38} We are not persuaded that Cordell’s work-rule violation prior to his injury severed his employment with Pallet for purposes of Cordell’s entitlement to TTD benefits. It is irrelevant to the legal dispute in this case that Cordell would have been fired if Pallet had subjected him to a random drug test prior to his workplace injury. Pallet did not do so. Here, Cordell was injured at work and that injury rendered him unable to return to work and caused him to be without wages. The causal connection between Cordell’s workplace injury and workers’ compensation could have been broken if Cordell was actually impaired at the time of the injury. Pallet has not at any time asserted that Cordell was intoxicated, or impaired at the time of the injury and has not asserted that R.C. 4123.54(A)(2) or (B) is applicable here.
{¶ 39} The result of our decision today is consistent with the compromise between employees and employers that is the foundation of Ohio’s Workers’ Compensation Act. Denial of statutory TTD benefits to an injured employee who was fired after an injury for conduct that occurred prior to the injury would encourage employers to investigate injured employees’ preinjury conduct for any dischargeable offenses and would undermine the core principles of workers’ compensation law and increase litigation in the state. This is a policy decision that should be made by the Ohio General Assembly, not by this court.
Conclusion
{¶ 40} Ohio’s system of workers’ compensation is a no-fault system that is the result of compromise between employers and employees. Pursuant to R.C. 4123.54 and 4123.56 and consistent with our decisions in Gross II and Reitter Stucco, we hold that when an employee is terminated after a workplace injury for conduct prior to and unrelated to the workplace injury, his termination does not amount to a voluntary abandonment of employment for purposes of TTD compensation when (1) the discovery of the dischargeable offense occurred because of the injury and (2) at the time of the termination, the employee was medically incapable of returning to work as a result of the injury.
Judgment affirmed.
Pfeifer, Lanzinger, and French, JJ., concur.
O’Connor, C.J., concurs in judgment only.
O’Donnell, J., dissents, with an opinion.
Kennedy, J., dissents, with an opinion.

. Likewise, because the employee was not tested for drugs until the day after he was injured, it is unclear whether his drug use occurred prior to or following his injury.