[Cite as *State ex rel. Honda of Am. v. Indus. Comm.*, 2021-Ohio-2113.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Honda of America Mfg., Inc., | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 19AP-315 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on June 24, 2021

**On brief:** *Eastman & Smith LTD., Mark A. Shaw, Melissa A. Ebel,* and *C. Awele Nwajei,* for relator.

**On brief:** *Philip J. Fulton Law Office,* and *Chelsea Fulton Rubin,* for respondent Todd A. Hughes.

**On brief:** *Dave Yost,* Attorney General, *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Honda of America Manufacturing, Inc. ("relator" or "Honda"), seeks a writ of mandamus ordering respondent Industrial Commission of Ohio (the "commission") to vacate its order granting the C-86 motion of respondent Todd Hughes ("Hughes") requesting that Honda pay for opioid prescription medication.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found the commission

No. 19AP-315

abused its discretion in granting Hughes's C-86 motion without considering the full text of the version of Ohio Adm.Code 4123-6-21.7 in effect for the time period relevant to the present case. Accordingly, the magistrate recommends this court grant relator's request for a writ of mandamus ordering the commission to vacate its February 9, 2019 order and hold a new hearing to properly apply the relevant regulation in considering Hughes's claim for reimbursement.

{¶ 3} Respondent commission and respondent Hughes have separately filed objections to the magistrate's decision. The commission filed the following three objections:

> [I.] The Magistrate Decision errs when it concludes that the language of Ohio Adm.Code 4123-6-21.7(D) governing opioid reimbursement applies to Hughes' claim.
>
> [II.] The Magistrate Decision erroneously found that "Refusal to consider the full text of former Ohio Adm.Code 4123-6-21.7 was an abuse of discretion on the part of the Commission."
>
> [III.] The Magistrate's Decision erred in concluding that "the Commission incorrectly applied Ohio Adm.Code 4123-6-21.7," as the Decision, even assuming the Rule applied, did not consider that Ohio Adm.Code 4123.6-21.7(G) also allows for a "compassionate care" exception considering the injured worker's injuries or treatment history.

{¶ 4} Hughes filed the following two objections:

> [I.] The Magistrate's Decision errs by ignoring the requirements self-insured employers must meet to terminate medication contained in Ohio Adm. Code 4123-6-21.1.
>
> [II.] Assuming Arguendo Ohio Adm. Code 4123-6-21.7 applies, the Magistrate erred in ignoring the "some evidence rule" and finding the Commission incorrectly applied the Ohio Administrative Code.

{¶ 5} Because the commission and Hughes have filed objections, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Neither the commission nor Hughes has filed objections to the magistrate's findings of fact. Having reviewed the record and the magistrate's decision

No. 19AP-315

pertaining to same and finding no error on the part of the magistrate in his determinations of the facts, we hereby adopt the magistrate's findings of fact in their entirety as our own.

{¶ 6} Turning to the magistrate's conclusions of law and respondents' objections to them, we begin by observing that in order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). Generally, a clear legal right to a writ of mandamus exists only where the relator meets its burden of establishing that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). Thus, it is only where there is not "some" evidence to support a factual finding that the commission abuses its discretion. *State ex rel. Ohio Presbyterian Retirement Servs. v. Indus. Comm.*, 151 Ohio St.3d 92, 2017-Ohio-7577, ¶ 12, citing *State ex rel. Cordell v. Pallet Cos., Inc.*, 149 Ohio St.3d 483, 2016-Ohio-8446, ¶ 19.

{¶ 7} Nevertheless, "[w]here the decision of the Industrial Commission is contrary to law, mandamus is appropriate if the relator has a clear legal right to a different remedy under the law than that afforded by the Industrial Commission." *State ex rel. Grumman Ohio Corp. v. Indus. Comm.*, 10th Dist. No. 86AP-395 (Sept. 3, 1987.) "If the commission misinterprets a statue, this court may issue a writ of mandamus to compel the commission to correct its erroneous interpretation." *Ohio Presbyterian Retirement Servs.* at ¶ 13, citing *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975) ("A mandatory writ may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law."), citing *State ex rel. Breidigan v. Indus. Comm.*, 36 Ohio Law Bs. 160 (2d Dist.1942) (mandamus may issue against the commission in situations other than those involving an abuse of discretion, such as when the commission failed to follow the law or incorrectly interpreted the law).

{¶ 8} In this case, the factual findings of the commission are not at issue; rather, at issue in this matter is the commission's construction, interpretation, and application of the workers' compensation regulations. More specifically, at issue is whether the commission correctly determined that Ohio Adm.Code 4123-6-21.7 does not apply to Hughes's workers' compensation claim and subsequent C-86 motion for reimbursement of opioid medication

(Percocet). As explained below, we agree with the magistrate that the commission erred in making this determination.

{¶ 9} The final order at issue in this mandamus action was issued by the commission on February 9, 2019; therefore, the former version of Ohio Adm.Code 4123-6-21.7 in effect on February 9, 2019 is applicable in this case. Under that version, Ohio Adm.Code 4123-6-21.7(E)(1) provides:

> (E) Opioid utilization at high doses or in the chronic phase of pain treatment.
>
> (1) Reimbursement for opioid prescriptions for an injured worker at doses greater than eighty milligrams MED per day **or in the chronic phase of pain treatment** shall only be provided in claims **where a prescriber has documented the following actions prior to** either escalating the dosing regimen beyond eighty milligram MED per day, or **prescribing opioids more than twelve weeks after the injured worker's date of injury or occupational disease or surgery related to allowed conditions in the claim** whichever occurs first:
>
> (a) Verification that the requirements of paragraphs (D)(1)(a) to (D)(1)(c) of this rule have been met.
>
> (b) Documentation that reasonable alternatives to opioids have been tried and failed.

(Emphasis added.) In turn, Ohio Adm.Code 4123-6-21.7(A)(1) defines the term "chronic phase of pain treatment" as follows:

> (1) "Chronic phase of pain treatment" means that an injured worker is considered to be experiencing chronic pain or pain that has persisted after reasonable medical efforts have been made to relieve the pain or cure its cause and that has continued, either continuously or episodically, **for longer than twelve continuous weeks** after the date of injury or occupational disease, or **after a surgical intervention related to the allowed conditions of the claim**.

(Emphasis added.)

{¶ 10} Finally, the version of Ohio Adm.Code 4123-6-21.7(C) in effect on February 9, 2019 provides:

No. 19AP-315

> (C) Effective October 1, 2016, for claims with a date of injury on or after September 1, 2016 and **for all claims on or after January 1, 2017**, reimbursement for opioid prescriptions used to treat a work related injury or occupational disease shall be limited to claims in which current best medical practices as implemented by Ohio state medical board rule 4731-21-02 of the Administrative Code and this rule are followed.
>
> **The bureau shall not reimburse for any further prescriptions for opioids, and prescribers should discontinue prescribing opioids, if the applicable criteria of** Ohio state medical board rule 4731-21-02 of the Administrative Code and **this rule are not met**. A prescriber's failure to comply with the requirements of these rules may constitute endangerment to the health and safety of injured workers, and claims involving opioid prescribing not in compliance with these rules may be subject to peer review by the bureau of workers' compensation pharmacy and therapeutics (P&T) committee pursuant to rule 4123-6-21.2 of the Administrative Code, the bureau of workers' compensation stakeholders' healthcare quality assurance advisory committee (HCQAAC) pursuant to rule 4123-6-22 of the Administrative Code, or other peer review committee established by the bureau.

(Emphasis added.)

{¶ 11} In aid to our task of construing the foregoing regulations, we first observe that courts "apply the rules of statutory construction to administrative rules as well." *McFee v. Nursing Care Mgt. of Am., Inc.*, 126 Ohio St.3d 183, 2010-Ohio-2744, ¶ 27, citing *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.*, 57 Ohio St.2d 51, 54 (1979) (finding the "ordinary meaning rule" of statutory construction applies equally to administrative rules). Thus, " '[t]he interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand.' We must read undefined words and phrases in context and construe them in accordance with rules of grammar and common usage.' " *State ex rel. Turner v. Eberlin*, 117 Ohio St.3d 381, 2008-Ohio-1117, ¶ 14, quoting *Morning View Care Ctr.-Fulton v. Dept. of Human Servs.*, 148 Ohio App.3d 518, 2002-Ohio-2878, ¶ 36 (10th Dist.).

{¶ 12} Courts lack authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation or liberal or narrow constructions. *State ex rel. Massie v. Bd. of Edn., Gahanna-Jefferson Pub. Schools*, 76 Ohio St.3d 584, 588

No. 19AP-315

(1996).  Rather, a court's duty is to give effect to the words used in a statute, not to delete or insert words.  *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, ¶ 10.  If the words in a statute are " 'free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.' "  *Silver Lining Group EIC Morrow Cty. v. Ohio Dept. of Edn. Autism Scholarship Program*, 10th Dist. No. 16AP-398, 2017-Ohio-7834, ¶ 34, citing *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 12, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus.  In short, "[a]n unambiguous statute is to be applied, not interpreted."  *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus.

{¶ 13} Here, the magistrate correctly determined that Ohio Adm.Code 4123-6-21.7 applies to Hughes's claim.  We agree with the magistrate that the language of Ohio Adm.Code 4123-6-21.7(E)(1) is plain, clear, and unambiguous that the rule applies "[e]ffective October 1, 2016, for claims with a date of injury on or after September 1, 2016 and for all claims on or after January 1, 2017."  Hughes's claim falls into the latter category of "all claims" for which the rule was effective as of January 1, 2017, and therefore the rule applies to his workers' compensation claim.

{¶ 14} The magistrate also correctly found that although in this case the prescriptions at issue were less than 80 milligrams per day, the record supports a finding that Hughes was well outside the 12-week period following initial injury or subsequent related surgery and therefore was in a "chronic phase of pain treatment" as defined by Ohio Adm.Code 4123-6-21.7(A)(1).  Yet, the commission's final order does not address this issue.  Therefore, the commission erred in failing to consider whether Hughes was in a chronic phase of pain treatment and whether the documentation requirements of Ohio Adm.Code 4123-6-21.7(E)(1)(a) and (b) were met.

{¶ 15} We point out that at a new hearing, evidence might be presented that would still permit the commission to approve of the reimbursement of the Percocet prescribed for Hughes.  So long as the required documentation is submitted, reimbursement for opioid prescriptions for an injured worker at doses greater than 80 milligrams MED per day or in the chronic phase of pain treatment will be provided.  In this case, however, and as the

magistrate found, because the commission failed to properly apply the rule in the first instance, the record before us is devoid of any such evidence.[1]

{¶ 16} Based on the foregoing discussion, we summarily reject the commission's first and second objections to the magistrate's decision, including its argument that the magistrate improperly applied Ohio Adm.Code 4123-6-21.7(E)(1) retroactively. As we have already stated, the plain and clear language of this rule unambiguously provides that it applies to all claims on or after January 1, 2017.

{¶ 17} Regarding the commission's third objection that the magistrate erred in failing to consider that Ohio Adm.Code 4123-6-21.7(G) also allows for a "compassionate care" exception considering the injured worker's injuries or treatment history, we find it meritless. Contrary to the assertion of the commission, the magistrate properly did not address this exception because nothing in the commission's final order of February 9, 2019 indicates the commission based any part of its decision to authorize the opioid reimbursement requested by Hughes on the "compassionate care" exception. Furthermore, the record contains no evidence to support authorization under the "compassionate care" exception. Our evidentiary review in this matter is limited to the evidence and reasoning identified in the commission's final order. *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 71 Ohio St.3d 139, 142 (1994). Therefore, the magistrate did not err by not considering whether the "compassionate care" exception might have applied in this case, and the commission's third objection is hereby overruled.

{¶ 18} As for Hughes's objections, we find they fare no better than those of the commission. Hughes's first objection that the magistrate's decision improperly ignores the requirements of Ohio Adm.Code 4123-6-21.1 governing the termination of reimbursement for outpatient medication flies in the face of the well-settled rule of statutory construction that a specific statutory provision prevails over a more general provision. *See State v. Volpe*, 38 Ohio St.3d 191, 193 (1988). In this case, Ohio Adm.Code 4123-6-21.7 is a specific provision addressing reimbursement of opioid prescriptions; therefore, its requirements

---

[1] We also note, however, that in her dissent to the commission's majority order, Commissioner Gilmor specifically found there was no evidence that Dr. O'Connor complied with any of the documentation requirements set forth in Ohio Adm.Code 4123-6-21.7(E)(1) which would permit reimbursement for opioid medication. Nevertheless, as that specific issue is not before us, we will not opine on it.

prevail over the requirements of the general provision set forth in Ohio Adm.Code 4123-6-21.1. Hughes's first objection is overruled.

{¶ 19} Finally, Hughes's second objection is utterly without merit. As discussed above, the issue in this case concerns the commission's construction, interpretation, and application of the workers' compensation regulations, *not* the factual findings of the commission. As such, the "some evidence" standard of review is wholly irrelevant in this matter. *See Ohio Presbyterian Retirement Servs.* at ¶ 13. Hughes's second objection is overruled.

{¶ 20} In sum, the commission erred in determining that Ohio Adm.Code 4123-6-21.7 did not apply to Hughes's claim and subsequent C-86 motion for reimbursement of opioid medication, and for the foregoing reasons, we overrule the objections filed by the commission and Hughes. Having conducted an examination of the magistrate's decision and an independent review of the record pursuant to Civ.R. 53, we find the magistrate properly applied the relevant law to the salient facts in reaching the conclusion that Honda is entitled to a writ of mandamus. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we grant relator's request for a writ of mandamus and order the commission to vacate its February 9, 2019 order and hold a new hearing to properly apply Ohio Adm.Code 4123-6-21.7 to Hughes's request for reimbursement of opioid medication.

*Objections overruled; writ of mandamus granted.*

SADLER and LUPER SCHUSTER, JJ., concur.

No. 19AP-315

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel.<br>Honda of America Mfg., Inc., | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No.  19AP-315 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

MAGISTRATE'S DECISION

Rendered on December 22, 2020

*Eastman & Smith LTD.*, *Mark A. Shaw*, *Melissa A. Ebel*, and *C. Awele Nwajei*, for relator.

*Philip J. Fulton Law Office*, and *Chelsea Fulton Rubin*, for respondent Todd A. Hughes.

*Dave Yost*, Attorney General, *Andrew J. Alatis*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 21} Relator, Honda of America Manufacturing, Inc., brings this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting an injured worker's C-86 motion to have Honda pay for opioid prescription medications.

Findings of Fact:

No. 19AP-315

{¶ 22} 1. Honda is a self-insured employer subject to Ohio workers' compensation law.

{¶ 23} 2. Respondent, Todd A. Hughes, on September 10, 1997, during the course and scope of his employment with Honda, suffered injuries to his back. (Stip. at 1.)

{¶ 24} 3. Hughes's claim was allowed for herniated disc with involvement of fifth lumbar nerve root, mechanical complication of internal orthopedic device, lumbar canal stenosis, joint instability, and left sacroiliitis. (Stip. at 3-4.)

{¶ 25} 4. Hughes subsequently underwent three back surgeries subject to the claim, the most recent in 2011. (Stip. at 7, 95.)

{¶ 26} 5. In November 2015, Hughes obtained authorization for Percocet as prescribed by John C. O'Connor, M.D., to treat chronic lower back pain. Hughes filed a corresponding motion for authorization of payment of Percocet by Honda pursuant to his allowed claim. (Stip. at 12.)

{¶ 27} 6. Honda objected to the authorization and, on February 18, 2016, a district hearing officer ("DHO") issued an order granting Hughes's motion. (Stip. at 50.)

{¶ 28} 7. Honda continued to oppose authorization for the medication, and a staff hearing officer ("SHO") issued an order on March 31, 2016 upholding the DHO order and granting authorization for payment. (Stip. at 55.)

{¶ 29} 8. Effective October 1, 2016, the Ohio Bureau of Workers' Compensation ("BWC") adopted Ohio Adm.Code 4123-6-21.7 entitled "[u]tilization of opioids in the subacute or chronic phases of pain treatment for a work-related injury or occupational disease." The new provision generally reflected an initiative to reduce dependency on opioids for treatment of chronic pain and impose limitations on continued authorization of medication payments.

No. 19AP-315

{¶ 30} 9. On February 16, 2018, Hughes filed a motion again requesting payment of opioid pain medication as prescribed by Dr. O'Connor. (Stip. at 140.)

{¶ 31} 10. The DHO issued an order on May 25, 2018 rejecting Honda's argument that Ohio Adm.Code 4123-6-21.7 applied to Hughes' claim for authorization of payment. The DHO granted authorization for continued payment of Percocet prescribed to Hughes and paid for by Honda. (Stip. at 152-53.)

{¶ 32} 11. Honda appealed the DHO's order, and the matter was heard before an SHO who also rejected application of Ohio Adm.Code 4123-6-21.7 and authorized continued reimbursement for the prescription opioids. The SHO's order found Ohio Adm.Code 4123-6-21.7 inapplicable because the provision's morphine-equivalent dose threshold did not apply to Hughes's claim: "[H]e is only being prescribed 5mg of Percocet, to be taken up to four times a day which is well below the 50mg [sic] morphine equivalent dose threshold set forth under Ohio Adm.Code 4123-6-21.7." (Stip. at 157.)

{¶ 33} 12. Honda again appealed the SHO's July 5, 2018 order, and the full commission accepted review. (Stip. at 165-67.) In preparation for the hearing before the full commission, Hughes filed a March 22, 2018 progress note from Dr. O'Connor, which stated that Hughes continued to present with low back pain and had a history of chronic back problems, and Dr. O'Connor provided prescription refills for 7.5 milligrams of Percocet.

{¶ 34} 13. After hearing the full commission, by two-to-one vote, entered an order mailed February 9, 2019 upholding authorization of continued payment of Percocet as prescribed by Dr. O'Connor. (Stip. at 172-77.) The commission, like the DHO and SHO before it, stated that it "rejects the Employer's contention that Ohio Adm.Code 4123-6-21.7

No. 19AP-315

applies here" because the prescribed dosage level was below the 50-milligram morphine-equivalent dose threshold of Ohio Adm.Code 4123-6-21.7.

{¶ 35} 14. The specified morphine-equivalent dose in Ohio Adm.Code 4123-6-21.7 at the time the commission entered its order was 80 milligrams.

{¶ 36} 15. Honda filed its complaint in mandamus with this court on May 14, 2019.

Discussion and Conclusions of Law:

{¶ 37} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, Honda must show both a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 38} Honda presents three arguments to establish that the commission's order must be vacated. First, Honda argues the commission acted contrary to law when it failed to apply Ohio Adm.Code 4123-6-21.7 to a claim adjudicated after January 1, 2017, regardless of the date of injury. Second, Honda argues that the commission incorrectly limited application of the section to high dose prescriptions, ignoring its applicability to opioids at any dosage when the claimant is in a subacute or chronic phase of pain

management. Third, Honda argues there is no evidence in the record to satisfy the documentation requirements of Ohio Adm.Code 4123-6-21.7(D) and (E), which are prerequisites to authorization of opioid reimbursement. Because the magistrate concludes the commission incorrectly applied Ohio Adm.Code 4123-6-21.7 and the matter must be returned to the commission for a new hearing and correct application of that provision, the magistrate does not reach the sufficiency of the evidence in the record to satisfy the other requirements for opioid prescription reimbursement.

{¶ 39} The version of Ohio Adm.Code 4123-6-21.7 at issue in the present case was in effect from October 1, 2016 to September 1, 2020. On the latter date, the BWC's regulatory scheme addressing concerns about opioid prescriptions for claimants was amended and various sections removed and replaced. The current provisions are found at Ohio Adm.Code 4123-6-21.7(A) through (E) and 4731-11-14. Because the current mandamus action involves the commission's alleged failure to apply regulations as they stood on the date of the commission's final order in the matter, February 9, 2019, any abuse of discretion on the part of the commission is measured by application of that former regulatory language.

{¶ 40} Former Ohio Adm.Code 4123-6-21.7(E)(1) provides as follows:

(E) Opioid utilization at high doses or in the chronic phase of pain treatment.

(1) Reimbursement for opioid prescriptions for an injured worker at doses greater than eighty milligrams MED per day or in the chronic phase of pain treatment shall only be provided in claims where a prescriber has documented the following actions prior to either escalating the dosing regimen beyond eighty milligram MED per day, or prescribing opioids more than twelve weeks after the injured worker's date of injury or occupational disease or surgery related to allowed conditions in the claim whichever occurs first:

(a) Verification that the requirements of paragraphs (D)(1)(a) to (D)(1)(c) of this rule have been met.

(b) Documentation that reasonable alternatives to opioids have been tried and failed.

{¶ 41} The definitional section of former Ohio Adm.Code 4123-6-21.7(A)(1) defines chronic phase of pain treatment as follows:

(1) "Chronic phase of pain treatment" means that an injured worker is considered to be experiencing chronic pain or pain that has persisted after reasonable medical efforts have been made to relieve the pain or cure its cause and that has continued, either continuously or episodically, for longer than twelve continuous weeks after the date of injury or occupational disease, or after a surgical intervention related to the allowed conditions of the claim.

{¶ 42} The regulation further provides an effective date for the new language of October 1, 2016 for new injuries and a delayed implementation until January 1, 2017 for older injuries:

(C) Effective October 1, 2016, for claims with a date of injury on or after September 1, 2016 and for all claims on or after January 1, 2017, reimbursement for opioid prescriptions used to treat a work related injury or occupational disease shall be limited to claims in which current best medical practices as implemented by Ohio state medical board rule 4731-21-02 of the Administrative Code and this rule are followed.

The bureau shall not reimburse for any further prescriptions for opioids, and prescribers should discontinue prescribing opioids, if the applicable criteria of Ohio state medical board rule 4731-21-02 of the Administrative Code and this rule are not met. A prescriber's failure to comply with the requirements of these rules may constitute endangerment to the health and safety of injured workers, and claims involving opioid prescribing not in compliance with these rules may be subject to peer review by the bureau of workers' compensation pharmacy and therapeutics (P&T) committee pursuant to rule 4123-6-21.2 of the Administrative Code, the bureau of workers' compensation stakeholders' healthcare quality assurance advisory committee (HCQAAC) pursuant to rule

4123-6-22 of the Administrative Code, or other peer review committee established by the bureau.

{¶ 43} The first conclusion is that the language of Ohio Adm.Code 4123-6-21.7(E) governing opioid reimbursement applies to Hughes' claim. Under Ohio Adm.Code 4123-6-21.7(C), the new language applied to all claims based on injuries occurring after September 1, 2016 immediately, and to all claims, without regard to date of occurrence, after January 1, 2017. Former Ohio Adm.Code 4123-6-21.7(E) therefore governs Hughes' application for reimbursement before the commission in 2019, and his date of injury in 1997 is not relevant.

{¶ 44} Former Ohio Adm.Code 4123-6-21.7(E) addresses opioid utilization either at high doses, initially defined as greater than 80 milligrams morphine-equivalent dose per day *or* opioids prescribed more than 12 weeks after the injured worker's date of injury or subsequent related surgery. There is no question the prescriptions at issue were less than 80 milligrams per day. However, Hughes was well outside the 12-week period following initial injury or subsequent related surgery.

{¶ 45} For reasons that are not clear from the record and are disputed by the dissenting commissioner, the commission in its final order in this matter did not address the timing of Hughes's injury or subsequent surgery when considering whether he was subject to the requirements of Ohio Adm.Code 4123-6-21.7(E) and (D). The commission's final order simply notes that the dosage is less than the threshold amount and does not consider whether Hughes was in a chronic phase of pain treatment, which is amply supported by the record, and whether the required documentation had been submitted in connection with the claim for reimbursement.

No. 19AP-315

{¶ 46} Refusal to consider the full text of former Ohio Adm.Code 4123-6-21.7 was an abuse of discretion on the part of the commission.  Because the commission declined to apply the administrative code provision in the first instance, the magistrate considers that this court should decline to do so until the commission as finder of fact shall have assessed Hughes under all the appropriate criteria, including the adequacy of the documentation submitted in support of the application for reimbursement.

{¶ 47} It is therefore the decision and recommendation of the magistrate that a writ shall issue ordering the commission to vacate its February 9, 2019 order and grant a new hearing applying the regulatory language discussed above to consider Hughes' claim for reimbursement.

/S/MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).